

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-17-1997

# Bonenberger v. Plymouth Twp

Precedential or Non-Precedential:

Docket 97-1047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Bonenberger v. Plymouth Twp" (1997). *1997 Decisions*. Paper 276.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/276

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 17, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 97-1047

CHERYL BONENBERGER,

     Appellant,

v.

PLYMOUTH TOWNSHIP; JOSEPH LA PENTA, SERGEANT,
PLYMOUTH TOWNSHIP POLICE DEPARTMENT

APPEAL FROM THE
UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

(D.C. Civil No. 96-cv-00403)

ARGUED SEPTEMBER 25, 1997

BEFORE: COWEN, ROTH, and LEWIS, Circuit Judges.

(Filed December 17, 1997)

       William L. McLaughlin, Jr.
        (ARGUED)
       23 South Valley Road
       Post Office Box 494
       Paoli, PA 19301

        Attorney for Appellant

       George H. Knoell, III (ARGUED)
       Kane, Pugh, Knoell & Driscoll
       510 Swede Street
       Norristown, PA 19401

        Attorney for Plymouth Township

         L. Rostaing Tharaud (ARGUED)
         Marshall, Dennehey, Warner,
          Coleman & Goggin
         1845 Walnut Street
         Philadelphia, PA 19103

          Attorney for Joseph La Penta

OPINION OF THE COURT

LEWIS, Circuit Judge.

Appellant Cheryl Bonenberger brought this sexual
harassment suit against her former employer, Plymouth
Township, located in Pennsylvania; the Plymouth Township
Police Department; and against Sergeant La Penta, a police
department employee. She has asserted claims under both
Title VII and 42 U.S.C. S 1983. This appeal requires us to
decide whether a police officer acts under "color of state
law" for purposes of 42 U.S.C. S 1983 when he sexually
harasses a co-employee whose work shift he supervises,
even if he is not her official supervisor and lacks authority
to hire or fire her. We must also apply our precedent in
Title VII sexual harassment cases, reaffirming the
established distinction between quid pro quo and hostile
work environment claims. For the reasons set forth below,
we will reverse in part and affirm in part the district court's
order of summary judgment dismissing Bonenberger's
allegations.

I.

Bonenberger worked as a dispatcher for the Plymouth
Township Police Department from about February 1993 to
April 11, 1994. She alleges that during her employment,
Sergeant Joseph La Penta regularly accosted her at work
with obscene remarks and unwelcome sexual advances.
She also claims that La Penta frequently fondled her
breasts or pinched her buttocks while she attempted to
complete work assignments. She contends that this ongoing
harassment occurred in the presence of police employees
and that management-level personnel became aware of La

2

Penta's conduct in January 1994, but for nearly three months did nothing to curtail it. Bonenberger adds that although she consistently rejected La Penta's advances, the harassment persisted, driving her to resign her position as dispatcher on April 11, 1994.

The parties agree that although La Penta did not hire Bonenberger and was not her official supervisor, he supervised all of the dispatchers, including Bonenberger, when no higher-ranking officer was on duty. At such times he had sole control over Bonenberger's work environment, determining when she and the other dispatchers might take a break and which tasks they would perform. Bonenberger testified that on one such occasion, he grabbed her buttocks in the presence of three other law enforcement officials. The police department's own independent investigation confirms that this incident occurred.

The district court granted defendants summary judgment on Bonenberger's claims that (1) La Penta, individually and in his official capacity, deprived her of the right to equal protection in violation of 42 U.S.C. S 1983 and the Fourteenth Amendment; (2) Plymouth Township Police Department's failure properly to control, discipline and train La Penta violated section 1983 and (3) Plymouth Township Police Department contravened Title VII by permitting La Penta's quid pro quo and hostile work environment sexual harassment. The district court also dismissed Bonenberger's state law claims of intentional infliction of emotional distress and battery against La Penta, and her claim against the police department under the Pennsylvania Human Relations Act, 43 Pa. Cons. Stat. S 951 et seq. (1991), declining to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. S 1367.1 Reviewing the record de novo, we will reverse the district

_____

1. 28 U.S.C. S 1367(c)(3) permits a district court to "decline to exercise supplemental jurisdiction over a [state law] claim . . . if [it] has dismissed all claims over which it has original jurisdiction .. . ." Moreover, where federal claims are dismissed before trial, the district court "must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." Borough of West Mifflin v. Lancaster, 45 F.3d 780, 788 (3d Cir. 1995).

court's order of summary judgment on Bonenberger's section 1983 claim against La Penta and on her Title VII hostile work environment claim against the police department. We will affirm the order of summary judgment with respect to her section 1983 claim and her claim of quid pro quo harassment against the department.

II.

A.

We address first Appellant's section 1983 claim against Sergeant La Penta.[2] A finding of liability under 42 U.S.C. S 1983 "requires that the defendant . . . have exercised power `possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.' " West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). See also Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

The district court correctly concluded that state action is a threshold issue in any section 1983 case. It erred, however, in holding that La Penta's harassment could not meet the color of law requirement solely because he "had no authority to hire, fire or make any employment decision regarding Bonenberger . . . ." Bonenberger v. Plymouth Township, No. Civ. A. 96-403, 1996 WL 729034, at *5 (E.D. Pa. Dec. 18, 1996). A state employee may, under certain circumstances, wield considerable control over a subordinate whose work he regularly supervises, even if he does not hire, fire, or issue regular evaluations of her work.

_____

2. Section 1983 provides, in pertinent part,

    Every person who, under color of any statute, ordinance, regulation,
    custom, or usage, of any State or Territory or the District of
    Columbia, subjects, or causes to be subjected, any citizen of the
    United States or other person within the jurisdiction thereof to the
    deprivation of any rights, privileges, or immunities secured by the
    Constitution and laws, shall be liable to the party injured in an
    action at law, suit in equity, or other proper proceeding for redress
    . . . .

42 U.S.C. S 1983 (1996).

4

See Poulsen v. City of North Tonawanda, 811 F. Supp. 884, 895 (W.D.N.Y. 1993) (factual dispute about the defendant's actual authority precludes summary judgment on section 1983 sexual harassment claim where plaintiff alleged that defendant possessed unwritten authority to influence her work evaluations and assignments). There is simply no plausible justification for distinguishing between abuse of state authority by one who holds the formal title of supervisor, on the one hand, and abuse of state authority by one who bears no such title but whose regular duties nonetheless include a virtually identical supervisory role, on the other.[3]

In so holding, we do not suggest that all acts of an on-duty state employee are state action for purposes of section 1983. Although "state employment is generally sufficient to render the defendant a state actor," West, 487 U.S. at 50 (citation omitted), not all torts committed by state employees constitute state action, even if committed while on duty. For instance, a state employee who pursues purely private motives and whose interaction with the victim is unconnected with his execution of official duties does not act under color of law. Mark v. Borough of Hatboro, 51 F.3d 1137, 1150 (3d Cir. 1995) ("[A]n otherwise private tort is not committed under color of law simply because the tortfeasor is an employee of the state."). In contrast, off-duty police officers who flash a badge or otherwise purport to exercise official authority generally act under color of law. Rivera v. La Porte, 896 F.2d 691, 696 (2d Cir. 1990) (finding state action existed because offender identified himself as peace officer, arrested plaintiff and used police car). Thus, the essence of section 1983's color of law requirement is that the alleged offender, in committing the act complained of, abused a power or position granted by the state.

_____

3. It appears that Sergeant La Penta and Sergeant Carbo, Bonenberger's official supervisor, performed exactly the same role when they were in charge of the dispatchers' shifts. The only appreciable difference between their authority over Bonenberger was that Carbo, not La Penta, was responsible for submitting written evaluations of her work. While this distinction is significant, it does not justify the district court's conclusion
that La Penta exercised no professional authority over Bonenberger.

In holding that Sergeant La Penta's conduct was not under color of law, the trial court relied heavily on Woodward v. Worland, 977 F.2d 1392 (10th Cir. 1992) and a district court decision, Rouse v. City of Milwaukee, 921 F. Supp. 583 (E.D. Wis. 1996). See Bonenberger, 1996 WL 729034, at *3 & n.2. These cases are inapposite. The Woodward court determined that the defendant police officers lacked authority over the plaintiffs, three dispatchers, only because the dispatchers worked for a private company rather than the police department itself. The Woodward court expressly "did not . .. decide whether an outside third party or co-employee could ever be liable for sexual harassment under [section] 1983 and the Equal Protection Clause." Woodward, 977 F.2d at 1401. Moreover, the same court of appeals that decided Woodward later noted that "in some instances co-employees may exercise de facto control over sexual harassment victims such that they act under color of law." David v. City of Denver, 101 F.3d 1344, 1354 (10th Cir. 1996) (section 1983 sexual harassment claim may not be dismissed for failure to state claim upon which relief may be granted merely because the defendants are non-supervisory co-workers).

We likewise find the district court decision in Rouse v. City of Milwaukee, 921 F. Supp. 583, 588 (E.D. Wis. 1996), to be inapplicable to the facts of this case. The Rouse plaintiffs and the police officer they sued for harassment "held the same rank and [the harasser] had no authority to give them orders." Id. The plaintiffs in Rouse therefore could offer no evidence that the perpetrator acted under color of law when he harassed them on the job. Instead, they alleged only that the accused officer, whose official rank was the same as theirs, had seniority and was generally well-connected in the department. Id. Unlike La Penta, the defendant in Rouse did not supervise the plaintiffs' work, and his seniority afforded him no authority over his colleagues' assignments.

In fact, the circumstances in Rouse stand in stark contrast to Sergeant La Penta's direct power to give Bonenberger orders when supervising her work shift. It is undisputed that La Penta could alter her workload whenever he supervised her shift. Indeed, as the

department's counsel conceded at oral argument, if
Bonenberger failed to follow his orders, the police
department would view that failure as insubordination for
which La Penta properly could begin a disciplinary process
that might result in her discharge. Under these
circumstances La Penta's role within the departmental
structure afforded him sufficient authority over
Bonenberger to satisfy the color of law requirement of
section 1983. C.f. David, 101 F.3d at 1354 (absent some
type of state authority on the part of the defendant, "it is
difficult to establish that the abusive action was
perpetrated `under color of state law' rather than as an
essentially private act of sexual harassment.") (citations
omitted). If a state entity places an official in the position of
supervising a lesser-ranking employee and empowers him
or her to give orders which the subordinate may not
disobey without fear of formal reprisal, that official wields
sufficient authority to satisfy the color of law requirement of
42 U.S.C. S 1983.

To conclude otherwise would be to create a perverse
incentive for government employers to avoid labeling
workers as supervisors, so as to insulate themselves from
section 1983 liability. Clearly, an employer should not be
permitted to evade so easily the statutory protections
against discrimination. We, therefore, look to substance
rather than form in determining whether an individual
defendant possesses supervisory authority. In doing so
here, and for the reasons discussed above, we will reverse
the district court's grant of summary judgment in favor of
La Penta.

B.

Bonenberger also alleges a section 1983 violation by
Plymouth Township Police Department.4 The district court
properly concluded that Bonenberger's allegations do not
create a genuine issue of fact concerning whether the
township's failure to train, discipline or control La Penta
_____

4. As in past cases, we treat the municipality and its police department
as a single entity for purposes of section 1983 liability. See, e.g.,
Colburn
v. Upper Darby Township, 838 F.2d 663, 671 n.7 (3d Cir. 1988).

violated 42 U.S.C. S 1983 and the equal protection clause of the Fourteenth Amendment. Section 1983 would impose liability for La Penta's inadequate training and discipline only if the Plymouth Police Department was deliberately indifferent to the rights of persons with whom he came in contact. See City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989) (holding that inadequate police training cannot give rise to mere respondeat superior liability). Deliberate indifference exists if the challenged act implements a municipal policy, i.e., a "statement, ordinance, regulation, or decision officially adopted and promulgated by[a local governing] body's officers." Simmons v. City of Philadelphia, 947 F.2d 1042, 1059 (3d Cir. 1991) (citation omitted). Section 1983 liability may also exist if the allegedly unconstitutional action reflects "practices of state officials . . . so permanent and well settled as to constitute a `custom or usage' with the force of law." Id. (citation omitted).

As a result, deficient training may form a basis for municipal liability under section 1983 only if " `both (1) contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents, and (2) circumstances under which the supervisor's inaction could be found to have communicated a message of approval to the offending subordinate' " are present. Freedman v. City of Allentown, 853 F.2d 1111, 1117 (3d Cir. 1988) (quoting Colburn v. Upper Darby Township, 838 F.2d 663, 673 (3d Cir. 1988)). Bonenberger has alleged no specific inaction by La Penta's supervisors that could be interpreted as encouraging his actions. To the contrary, it is undisputed that the police department had a policy against sexual harassment and that La Penta's regular training included education intended to prevent such behavior. Therefore, we will affirm the district court's order granting summary judgment on Bonenberger's section 1983 claim against the department.

III.

We now turn to Bonenberger's allegation under Title VII, in which she claims that she was subjected to hostile work environment harassment by the Plymouth Township Police

Department. To make out a prima facie case of hostile work environment sexual harassment under Title VII, a plaintiff must prove

> (1) the employee suffered intentional discriminati on because of [his or her] sex; (2) the discrim ination was pervasive and regular; (3) the discrimination detrimentally affected the plaintiff; (4) the discrimination would detrimentally affect a reasonable person of the same sex in that position; and (5) the existence of respondeat superior liability.

Andrews v. City of Philadelphia, 895 F.2d 1469, 1482 (3d Cir. 1990). We conclude that the district court erroneously granted summary judgment in favor of the department on Bonenberger's hostile work environment claim. Specifically, we hold that the court erred in finding that Bonenberger failed to satisfy the respondeat superior element of the prima facie test. See Bonenberger, 1996 WL 729034, at *8.

Respondeat superior liability exists in connection with a hostile environment sexual harassment claim if either: (1) the tort is committed within the scope of employment (i.e., the harasser has actual authority over the victim, by virtue of his job description); (2) the employer was negligent or reckless in failing to train, discipline, fire or take remedial action upon notice of harassment; or (3) the offender relied upon apparent authority or was aided in commission of the tort by the agency relationship. See Bouton v. BMW of North America, Inc., 29 F.3d 103, 106 (3d Cir. 1994). Thus if the employer knew or should have known of the harassment and failed to take prompt remedial action, it is liable under Title VII. Andrews, 895 F.2d at 1486.

In this case, the police department had a sexual harassment policy in place during the entire period that she worked there, and Bonenberger knew of the policy, yet she did not file a formal report until shortly before leaving the department. La Penta's supervisor, Captain Pettine, testified that he learned of the harassment only five days before Bonenberger quit, when it was reported by a sergeant. He immediately questioned Bonenberger. Upon learning that La Penta was the alleged aggressor, Pettine informed Chief Cross and questioned La Penta about the

9

reported incidents. Bonenberger left the department a few days later, claiming that she could no longer endure La Penta's treatment. The department nonetheless continued its investigation and despite inconclusive findings, issued Sergeant La Penta a letter of reprimand. On the basis of this evidence, the district court found no factual dispute with respect to Bonenberger's hostile work environment claim because "[d]efendants promptly and adequately responded to Bonenberger's allegations of sexual harassment." Bonenberger, 1996 WL 729034, at *9.

The township's remedial actions insulate it from Title VII liability only if they were "reasonably calculated to prevent further harassment." Knabe v. Boury Corp., 114 F.3d 407, 412 (3d Cir. 1997) (citations omitted). While the response detailed above suggests that the department pursued appropriate remedial action, the district court disregarded evidence suggesting that "management-level employees had actual or constructive knowledge about the existence of a sexually hostile environment and failed to take prompt and adequate remedial action" in violation of Title VII. Andrews, 895 F.2d 1486. Specifically, Bonenberger testified that her official supervisor, Sergeant Carbo, knew about and acquiesced in La Penta's harassment. She stated that in mid-January 1994, La Penta pinched her buttocks in front of a group of officers, and that "all of the officers were laughing, including Sergeant James Carbo" who was "standing next to Sergeant La Penta when the incident occurred."[5] She also maintains that on April 1, 1994, La Penta approached her from behind while she was speaking to Sergeant Carbo and slid his hand across her chest. According to Ms. Bonenberger, although she told La Penta to stop, Carbo merely smiled and did not indicate in any way that he disapproved of La Penta's actions.

Bonenberger also alleges that other management-level officials knew she was being harassed almost two months before she resigned and chose not to discipline La Penta or otherwise curtail the harassment.[6] She testified, and the

_____

5. Reproduced Record, Volume I, at 184.

6. Bonenberger resigned from her position as dispatcher on April 11, 1994. The incident when La Penta grabbed her buttocks in front of three other police officers allegedly occurred on February 13, 1994.

10

township's investigation confirmed, that on February 13, 1994, Sergeant La Penta grabbed her buttocks in the presence of Sergeant Galetti, Officer Obenski, and Officer McBride. The record shows that a few weeks after the incident witnessed by Sergeant Galetti, the police department distributed a new version of its sexual harassment policy, which differed from the original policy only in its inclusion of a statement that the policy also applied to dispatchers. Bonenberger claims that this is evidence that the department had become aware of La Penta's actions and, as a result, amended and redistributed its policy on harassment. Certainly, one might reasonably question whether an employer's simple reissuance of an existing sexual harassment policy is an appropriate remedial action, particularly when the employer knows both that harassment is occurring and the name of the employees involved.7 The discrepancy between Bonenberger's version of the facts and that urged by La Penta, Plymouth Township and Plymouth Police Department, presents an issue of material fact that should be resolved at trial.

The police department also argues that its written sexual harassment policy insulates it from Title VII liability for hostile environment sexual harassment. But this would be true only if that policy contained an effective grievance procedure. See Bouton, 29 F.3d at 110 ("[A]n effective grievance procedure -- one that is known to the victim and that timely stops the harassment -- shields the employer from Title VII liability for a hostile work environment."). In

_____

7. Since, under the police department's own policy, Sergeants Galetti and Carbo were responsible for investigating complaints of sexual harassment, see note 9, supra, their failure to take prompt and appropriate remedial action, if proven at trial, gives rise to departmental
liability. See Young v. Bayer Corp., 123 F.3d 672 (7th Cir. 1997)(Title VII
liability for hostile environment harassment arises when "information [about sexual harassment] either (1) come[s] to the attention of someone who (a) has under the terms of his employment, or (b) is reasonably believed to have, or (c) is reasonably charged by law with having, a duty to pass on the information to someone within the company who has the power to do something about it; or (2) come[s] to the attention of such a someone.").

11

this case, it is clear that the department's harassment policy did not specify a grievance procedure.8 Since, as previously noted, there exists a genuine dispute of material fact as to whether the department's remedial efforts were otherwise adequate, we must reverse.

IV.

Bonenberger also alleges that she suffered quid pro quo sexual harassment. We recently held that "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature constitute [quid pro quo] sexual harassment when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment [or] (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual . . . ." Robinson v. City of Pittsburgh, 120 F.3d 1286, 1296 (3d Cir. 1997) (quoting 29 C.F.R. S 1604.11(a)(1) and (a)(2)).

Bonenberger maintains that two sets of facts alleged in her complaint satisfy this definition. First, La Penta told her that she had taken too many sick days, adding "you better -- if you really like this job and you want to stay here, you better start straightening out and conforming to the rules." Bonenberger attempts to characterize this as a veiled threat to have her fired for rejecting his sexual advances. Second, she claims La Penta's behavior effectively conditioned her continued employment upon her willingness to endure a

_____

8. The department's policy is a two-page statement divided into four sections. The first section, entitled "Purpose," is a paragraph generally emphasizing that "the Plymouth Township Police Department will not tolerate sexual harassment of any type." Plymouth Township Police Department, General Order D-137, dated March 1, 1994, at 1. The second section, "Policy" adopts the EEOC's definition of sexual harassment, directs employees to refrain from engaging in such harassment, states that complaints must be investigated, and indicates that those who violate the policy will be disciplined. The third section defines the terms "employee" and "sexual harassment," and offers examples of offending conduct. The final section, "Distribution," indicates that a copy of the policy should be given to all personnel.

12

sexually-charged hostile work environment. Neither of these theories alleges a claim of quid pro quo sexual harassment.

Although Bonenberger claims that she viewed La Penta's warning about sick leave as a threat that La Penta would seek to have her fired, she conceded at her deposition that even when the statement was made, she knew La Penta lacked power to terminate her employment. Title VII quid quo pro sexual harassment generally requires that the harasser have authority to carry out the quid pro quo offer or threat. See Tomkins v. Public Service Electric & Gas Co., 568 F.2d 1044, 1048-49 (3d Cir. 1977) (quid pro quo sexual harassment occurred when supervisor responsible for evaluating plaintiff 's work stated during promotion discussion that he expected her to have sexual relations with him); Craig v. Y & Y Snacks, 721 F.2d 77, 80 (3d Cir. 1983) (plaintiff 's dismissal for refusing sexual advances of supervisor with plenary authority over employment decisions was quid pro quo harassment). In this case, it is undisputed that La Penta could not fire Bonenberger, even assuming he actually threatened to do so.

More importantly, Title VII liability exists only if "the consequences attached to an employee's response to the sexual advances [are] sufficiently severe to alter the employee's compensation, terms, conditions or privileges of employment." Robinson, 120 F.3d at 1296-97. La Penta's statement that abusing the department's sick leave policy could cause her dismissal in no way changed the terms and conditions of Bonenberger's employment, because she had always been subject to dismissal for improperly failing to report for work. Further, La Penta did not suggest, either by word or action, that sexual favors were the price for keeping her job. Therefore, we hold that the district court properly concluded that no quid pro quo threat existed on this record.

Bonenberger also presents a novel argument that constructive discharge due to a hostile work environment may provide the "quid" in a claim of quid pro quo sexual harassment under Title VII. She argues that in her case, La Penta's actions effectively made enduring his harassment a condition of keeping her job. This reasoning confuses the elements of quid pro quo and hostile work environment

13

harassment. Sex discrimination results in constructive discharge if "the conduct complained of would have the foreseeable result that working conditions would be so unpleasant or difficult that a reasonable person in the employee's shoes would resign." Goss v. Exxon Office Systems Co., 747 F.2d 885, 887–88 (3d Cir. 1984). Although Bonenberger has alleged facts sufficient to survive summary judgment on her claim of constructive discharge due to a hostile work environment, this alone is not enough to make out a claim for quid pro quo harassment. In this case, there is no quo for the alleged quid of enduring the hostile work environment. As noted above, quid pro quo harassment requires a direct conditioning of job benefits upon an employee's submitting to sexual blackmail, or the consideration of sexual criteria in work evaluations. In the absence of evidence that the employer intended to force the plaintiff 's resignation, constructive discharge cannot form the basis for quid pro quo sexual harassment.9 While the line between quid pro quo and hostile work environment harassment is not always clear and the elements present in one case sometimes may give rise to both types of claims, such is not the case here. We therefore reject Bonenberger's hybrid legal theory and affirm the district court's order granting summary judgment with respect to her claim of quid pro quo harassment.

For the foregoing reasons, we affirm the district court's order granting summary judgment with respect to Bonenberger's Title VII claim of quid pro quo sexual harassment and her section 1983 claim against Plymouth Township. With regard to all other claims, we will vacate the district court's order granting summary judgment and remand for further proceedings consistent with this opinion.10

_____

9. We do not decide whether constructive discharge, combined with evidence that the employer sought to force a resignation, can ever constitute quid pro quo sexual harassment. Since no such evidence has been presented in this case, we defer resolution of this question for another day.

10. We also reject Bonenberger's argument that the district court erred in permitting Appellees additional time in which to amend their summary judgment motion. Under the circumstances, this decision was well within the district court's discretion.

14

On remand, the district court is directed to reinstate
plaintiffs' state law claims.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

                          15