

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-11-2004

# Zelinski v. PA State Pol

Precedential or Non-Precedential: Non-Precedential

Docket No. 03-4025

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Zelinski v. PA State Pol" (2004). *2004 Decisions.* Paper 400.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/400

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**REPORTED-NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 03-4025

LAURA ZELINSKI,

Appellant.

v.

PENNSYLVANIA STATE POLICE;
COMMONWEALTH OF PENNSYLVANIA, THE;
LOU ALTIERI, RICHARD WEINSTOCK

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 01-cv-01979
Chief District Judge:   Honorable Thomas J. Vanaski

Argued on May 24, 2004

Before:   ROTH, STAPLETON, Circuit Judges
SCHWARZER,* Senior District Judge

(Opinion filed August 11, 2004)

_____*The Honorable William W Schwarzer, Senior United States District Judge for the
Northern District of California, sitting by designation.

---

OPINION

---

**ROTH**, <u>Circuit Judge</u>:

Trooper Laura Zelinski brought an action against the Pennsylvania State Police (PSP), the Commonwealth of Pennsylvania, Corporal Lewis Altieri, and Trooper Richard Weinstock (both employees of the PSP), pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.§ 2000e-2000e-17 (West 2004), the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. § 955 (West 2004), and 42 U.S.C. §§ 1983, 1985, and 1988. Zelinski's claims arise out of alleged incidents of sexual harassment and discrimination. For the reasons that follow, we will affirm in part and reverse in part.

## I. FACTUAL AND PROCEDURAL HISTORY

Zelinski became a member of the PSP specialized drug investigation unit, known as the Tactical Narcotics Team (TNT) unit, in May of 1999. According to Zelinski, Trooper Weinstock began sexually harassing her almost immediately. After several months, Zelinski told her supervisor, Corporal Altieri, that she did not feel comfortable working with Weinstock. She related to Altieri the incidents of sexual harassment and told Altieri that she did not want anything to be done about them. Zelinski maintains that Altieri subsequently subjected her to unfair criticism because Altieri favored Weinstock.

2

Beginning in the fall of 1999, there was significant tension within the TNT unit, much of it the result of individual members' problems with Trooper Weinstock. Altieri, head of the unit, informed his immediate supervisor, Sergeant Michael Ruda, about the unit's problems. Once this information went through the appropriate chain of command, Captain John Duignan recommended that Zelinski and another TNT member be removed from the unit. In August 2000, Major Tyree Blocker transferred Zelinski from the TNT unit. Zelinski lost neither rank nor pay as a result of the transfer. After the transfer, Zelinski filed a written sexual harassment complaint with the PSP's Equal Opportunity Officer. On November 15, 2000, she filed a complaint with the Pennsylvania Human Relations Commission. After receiving a right to sue letter, Zelinski brought this action.

Zelinski filed an action in the District Court for the Middle District of Pennsylvania against the PSP, the Commonwealth of Pennsylvania, Corporal Lewis Altieri, and Trooper Richard Weinstock, bringing claims pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2000e-17 (West 2004), the Pennsylvania Human Relations Act, 43 PA. CONS. STAT. ANN. § 955 (West 2004), and 42 U.S.C. §§ 1983, 1985, and 1988. Weinstock filed a motion to dismiss, and all defendants filed motions for summary judgment. The District Court denied Weinstock's motion to dismiss but granted the defendants' motions for summary judgment on all claims. Zelinski appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1291. We

3

exercise plenary review over a District Court's grant of summary judgment. *Assaf v. Fields*, 178 F.3d 170, 171 (3d. Cir. 1999). Summary judgment should be granted if the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if its existence or nonexistence might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

### III. DISCUSSION

**A. Summary Judgment in favor of Trooper Weinstock on the 42 U.S.C. § 1983 claim**

Zelinski claims that the District Court erred in granting summary judgment in favor of Weinstock on her § 1983 claim. In order to sustain a claim under 42 U.S.C. § 1983[1], Zelinski must establish that a person, acting under the color of state law, deprived her of a right secured by the Constitution. *Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003). "A finding of liability under 42 U.S.C. § 1983 requires that the defendant . . .

---

[1]Section 1983 provides, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983 (2004).

have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Bonenberger v. Plymouth Township*, 132 F.3d 20, 23 (3d Cir. 1997) (internal quotations and citations omitted). Generally, in order to act under the color of state law, the wrongdoer must be in a supervisory position in relation to the plaintiff. *See id.* at 23-24. The District Court concluded that Zelinski presented no evidence "to suggest that Weinstock was Zelinski's superior at any time that he engaged in the alleged acts of sexual harassment." *Zelinski v. Pa. State Police*, 282 F. Supp. 2d 251, 266 (M.D. Pa. 2003). We agree that summary judgment was proper.

Zelinski offers no evidence that any of the incidents of sexual harassment occurred at any time when Weinstock was in a supervisory position in relation to Zelinski. Both Zelinski and Weinstock were troopers at all relevant times, neither person having authority over the other. The only time Weinstock was in a supervisory position in relation to Zelinski was at the end of July 2000 when Corporal Altieri was on vacation. No incidents of sexual harassment occurred during this period of time.

The fact that Weinstock was not Zelinski's formal supervisor at the time of the harassment, however, is not dispositive. *See Bonenberger*, 132 F.3d at 23-24. In *Bonenberger*, we looked at the substance of the individual defendant's job functions, rather than the form, to determine whether an employee was acting in a supervisory capacity. *Id.* The two primary factors the Court examined to determine whether there

5

was de facto supervisory control were 1) whether the defendant could alter the plaintiff's workload, and 2) whether the plaintiff would face charges of insubordination for failure to obey the defendant's order. *Id.* At all relevant times, Weinstock could not alter Zelinski's workload and Zelinski could not be charged with insubordination for failing to obey Weinstock's orders.

For the foregoing reasons, we will affirm the District Court's grant of Weinstock's motion for summary judgment on Zelinski's § 1983 claim.

**B. Summary Judgment for the PSP on the Title VII sexual discrimination claim**

Zelinski also argues that the District Court erred in granting the PSP's motion for summary judgment on her Title VII claim. A plaintiff can establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). However, "not all work place conduct that may be described as 'harassment' affects a 'term, condition, or privilege' of employment within the meaning of Title VII." *Id.* at 67. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).

The District Court held that there was no genuine issue of material fact as to

hostile work environment because the harassment Zelinski suffered was not severe or pervasive enough. We disagree with the District Court and will remand the case on this claim because we do find that there is a genuine issue of material fact.

A totality of the circumstances test determines whether the threshold level of severity and pervasiveness has been reached. *Harris*, 510 U.S. at 23. The severity of the harassment, the frequency of the harassment, and the degree of abuse are factors courts should consider. *Id.* Zelinski offers four alleged incidents of sexual harassment as proof that she was exposed to a hostile work environment. The first incident occurred while Weinstock and Zelinski were car pooling from a training session when Weinstock told Zelinski he was sexually attracted to her, placed his hand on her leg, and suggested that he come over to Zelinski's hotel room to give her a full body massage. The second incident occurred while Weinstock and Zelinski were riding in a surveillance van together when Weinstock described in graphic detail the manner in which he wanted to have sex with Zelinski. The third incident occurred when Weinstock told Zelinski, "If I can see down your sweater, everyone else can." The fourth incident occurred when Weinstock, repeatedly throughout the day, told Zelinski that he could see her underwear.

Aside from these four specific incidents of sexual harassment, other circumstances contributed to the creation of a hostile work environment. Zelinski alleges that Altieri did not believe what Zelinski told him about Weinstock, he criticized her for making the report, and he told Zelinski that Weinstock was a "nice guy." Zelinski also claims that

Altieri subjected Zelinski to unjustified criticism concerning the execution of a search warrant and other alleged misconduct, and he placed a disciplinary notation in her file.

There is also a genuine issue of material fact as to whether Weinstock failed to provide Zelinski with protection and assistance during an undercover drug operation. If Weinstock failed to provide Zelinski with protection and if there was a connection between Zelinski's rejections of Weinstock's advances and the failure to provide protection, then a reasonable jury may conclude that the harassment was sufficiently severe and pervasive. By failing to provide Zelinski with adequate protection in the dangerous and sometimes deadly world of drug law enforcement, Weinstock may have created a hostile work environment. Viewing this incident in light of a comment Weinstock made to another trooper after Zelinski's report to Corporal Altieri, "Laura [Zelinski] tried to hurt me with Lou [Altieri] and now I'm going to hurt her," it becomes more apparent that Zelinski may have been exposed to a hostile work environment.

All of the alleged incidents that contributed to the hostile work environment occurred over a period of time slightly over one year. The number of incidents in this relatively short length of time shows that the incidents of harassment are more than isolated and unrelated. Considering all of these alleged incidents together, Zelinski has presented enough evidence to establish that there is a genuine issue of material fact, sufficient to go to a fact finder, as to whether she was exposed to a severe and pervasive hostile work environment. Summary judgment in favor of the PSP was inappropriate

because "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

For the foregoing reasons, we will vacate the judgment on the Title VII discrimination claim and remand it for further proceedings.

**C. Summary Judgment for the PSP, Altieri, and Weinstock on the Title VII and First Amendment retaliation claims**

Finally, Zelinski appeals the District Court's grant of summary judgment in favor of the PSP, Altieri, and Weinstock on her Title VII and First Amendment retaliation claims. Zelinski has the initial burden of proving a prima facie case of discriminatory retaliation. Zelinski must demonstrate that (1) she engaged in a Title VII protected employee activity, (2) the employer took an adverse employment action against her, and (3) there is a causal link between the engaged protected activity and the adverse employment action. *Weston v. Pennsylvania,* 251 F.3d 420, 430 (3d Cir. 2001). The District Court held that Zelinski's report of the sexual harassment incidents to Altieri was not a protected activity under Title VII and that, even if it was, there was no causal connection between the report and her transfer. We disagree with the District Court. We will vacate the judgment on this claim because there are genuine issues of material fact and remand it to the District Court.

Protected activities under Title VII include situations where an employee "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" Title VII. 42 U.S.C. § 2000e-3(a). A formal letter of

9

complaint to an employer or the EEOC is not the only way to meet the protected activity criterion. *Barber v. CSK Distribution Services*, 68 F.3d 694, 702 (3d Cir. 1995). Protected activities include formal charges of discrimination, "as well as informal protests of discriminatory employment practices, including making complaints to management . . .." *Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). It is necessary to analyze the message conveyed, rather than "the medium of conveyance." *Barber*, 68 F.3d at 702.

Zelinski reported the alleged incidents of sexual harassment to her superior, Corporal Altieri, after being questioned about how she was getting along with the other members of the TNT unit. During the conversation, Zelinski related to Altieri the two incidents when Weinstock made sexual advances toward Zelinski. The fact that Zelinski told Altieri that she did not want anything to be done in response to Weinstock's conduct, does not bar her statements to Altieri from being a protected activity. A reasonable jury could conclude that this conversation fell within the ambit of a protected activity.

The District Court properly held that Zelinski's transfer to a patrol unit was an "adverse employment action" under Title VII. The fact that Zelinski lost neither pay nor rank as a result of the transfer is not dispositive. *See Hampton v. Borough of Tinton Falls Police Dept.*, 98 F.3d 107, 115-116 (3d Cir. 1996) (summary judgment reversed where plaintiff claimed that patrol assignment was less desirable than detective bureau, even though plaintiff did not lose pay or rank as a result of transfer); *Torre v. Casio, Inc.*, 42

10

F.3d 825, 831 n.7 (3d Cir. 1994) ("[A] transfer, even without loss of pay or benefits, may, in some circumstances, constitute an adverse job action.").

In addition to proving protected activity and adverse employment action, Zelinski must also show a causal relationship between the protected activity (her complaint to Altieri) and the adverse employment action (her transfer from the TNT unit). Zelinski's alleged complaint to Altieri regarding Weinstock's sexually harassing comments occurred during a conversation in October of 1999. Her transfer from the TNT unit occurred in August of 2000, ten months after her report to Altieri.

In *Farrell v. Planters Lifesavers Co.*, we acknowledged that "our case law is 'seemingly split' as to whether temporal proximity between the protected activity and the alleged retaliatory act can be sufficient in itself to create an inference of a causal connection for the purposes of a prima facie case of retaliation." 206 F.3d 271, 279 (3d Cir. 2000) (citing *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)). The facts and contexts of each case are important in determining whether there is a causal relationship. Temporal proximity alone is insufficient to establish the required causal connection when temporal proximity is not "unusually suggestive." *Id.* at 280. "When there may be a valid reason why the adverse employment action was not taken immediately, the absence of immediacy between the cause and effect does not disprove causation." *Kachmar v. Sungard Data Sys.*, 109 F.3d 173, 178 (3d Cir. 1997).

A discharge occurring two days after a plaintiff filed an EEOC complaint is

"unusually suggestive." *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989). By itself, a nineteen-month span of time was considered too long a period to be "unusually suggestive." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997). The ten-month time period between Zelinski's complaint and her transfer is not as "unusually suggestive" as the two-day period in *Jalil*, but is more "suggestive" then the nineteen-month period of time in *Krouse*. Alone, the ten-month period of time may not meet the threshold test of "unusually suggestive."

By examining the other factors that can establish causation, however, we believe that a rational fact finder could decide that there was causation between the two events. There may have been a valid reason why no adverse action was taken right away. Corporal Altieri began to communicate Zelinski's sexual harassment claims to his superiors sometime before June 2000. It is possible that the individuals with authority to transfer Zelinski (or any other member of the TNT unit for that matter) were unaware of the problems and therefore did not react before August 2000. The time period between Altieri telling his superiors about the sexual harassment and Zelinski's transfer was a period of only two months. This is much more "unusually suggestive" than a period of ten months.

Zelinski has also presented evidence of at least four incidents of intervening antagonism between the time she told Altieri of her problems with Weinstock and the time of her transfer. *See Robinson v. S. E. Pa. Transp. Auth.*, 982 F.3d 892, 895 (3d Cir.

12

1993) ("intervening pattern of antagonism" during the period between the protected activity and the adverse employment action can prove causation). Zelinski alleges she was subjected to false criticism for the execution of a search warrant in January 2000, in front of other troopers; she was unfairly criticized for misconduct in April 2000; and Altieri placed a disciplinary note in her file. Finally, Zelinski maintains that she had to undergo two separate sessions of unwarranted disciplinary counseling in July of 2000.

A plaintiff can also establish the causation element by providing evidence of inconsistent reasons for the adverse employment action. *Farrell*, 206 F.3d at 281. Captain Duignan provided a number of reasons why Zelinski was transferred. Zelinski has presented evidence, contradicting Duignan, to show that a genuine issue of material fact exists pertaining to those reasons. If it is determined that these reasons are merely pretextual, then they can be considered inconsistent reasons for the adverse employment action, ultimately leading to a conclusion of causation. The reasons offered by Captain Duignan for Zelinski's transfer include that 1) Zelinski had an attitude problem, was not a team player, and was difficult to supervise; 2) she bad-mouthed Altieri to other people; 3) she mishandled herself during the execution of a search warrant; 4) she criticized PSP patrol officers; 5) she failed to keep her search warrant probable cause information current; 6) she cancelled a planned undercover drug operation; and 7) she was argumentative during a meeting. Zelinski either denies or offers evidence to negate or contradict each reason.

Viewing all of the other evidence in the light most favorable to Zelinski, the nonmoving party, we believe that a reasonable jury could find in favor of Zelinski regarding the causation element. Therefore, we will vacate the judgment on the the Title VII retaliation claim and remand it to the District Court.

The District Court also granted summary judgment on Zelinski's First Amendment retaliation claim based on its ruling on Zelinski's Title VII retaliation claim. *Zelinski*, 282 F. Supp. 2d at 273, n.22. ("As Zelinski has failed to show any retaliation, it is unnecessary to determine whether her complaint was protected speech," for purposes of her First Amendment retaliation claim.) Because we are remanding on the issue of retaliation, we must now also consider Zelinski's First Amendment retaliation claim. We conclude that there is no validity to the First Amendment claim. As we held in *Azzaro v. County of Allegheny*, 110 F.3d 968, 977 (3d Cir. 1997) (en banc), "the expressive rights of public employees are more restricted that those of public citizens who are not in an employment relationship with the government." (citing *Connick v. Myers*, 461 U.S. 138 (1983)). A public employees's speech is protected only if it relates to a matter of public concern, *i.e.*, if "it is important to the process of self-governance that communications on this topic, in this form and in this context, take place." *Id.* at 977.

In *Azzaro*, we reversed the District Court's grant of summary judgment to the defendants because Azzaro's speech "brought to light actual wrongdoing on the part of one exercising public authority that would be relevant to the electorate's evaluation of the

14

performance of the office of an elected official." *Id.* at 978. The *Azzaro* Court contrasted the situation presented in our case:

> We are not here presented with a situation in which a public employee has filed a complaint about an isolated incident of what he or she perceived to be inappropriate conduct on the part of a non-supervisory co-worker. While we express no opinion on such a situation, it would presumably be less important to an evaluation of the performance of the public office involved than the situation now before us.

*Id.* at 979 n.4.

Here, Zelinski, a public employee, complained to Altieri about inappropriate conduct by Weinstock, a non-supervisory co-worker. Neither Altieri or Weinstock work directly under any elected official, and their actions do not appear relevant to the electorate's evaluation of the performance of the office of any elected official. While speech about sexual harassment and other discrimination is certainly important, neither the form, context, nor content of Zelinski's speech support a finding that it addressed a matter of public concern. *See id.* at 976 (whether an employee's conduct addresses a matter of public concern "is to be determined by the 'content, form, and context of a given statement'" (quoting *Connick*, 461 U.S. at 147-48)). Zelinski did not make a public speech about the evils of sexual harassment; she, instead, stated in an informal conversation that a non-supervisory co-worker made improper sexual advances toward her but that she did not desire to see any official action taken. This conversation, while protected under Title VII, has little or no "instrumental value to the community in enabling self-governance," *id.* at 977, and thus does not appear to have addressed a matter

15

of sufficient public concern to warrant First Amendment protection. For those reasons, we will affirm the dismissal of the First Amendment claim.

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's grant of summary judgment in favor of Trooper Weinstock on the 42 U.S.C. § 1983 claim and the judgment dismissing the First Amendment retaliation claim. We will vacate the judgment on the Title VII discrimination claim and remand it to the District Court for further proceedings consistent with this opinion.