

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-23-2008

# Walsifer v. Belmar

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4752

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Walsifer v. Belmar" (2008). *2008 Decisions*. Paper 1719.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1719

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-4752
_____

MARK WALSIFER,

Appellant,


v.


BOROUGH OF BELMAR;
BOROUGH OF BELMAR POLICE DEPARTMENT;
RICHARD LYNCH, individually and in his
official capacity as Chief of Police and
Borough Administrator for the Borough of Belmar,


_____


On Appeal from United States District Court
for the District of New Jersey
District Court No.: 04-cv-5393
District Judge: Honorable Dickinson R. Debevoise
_____

Submitted Under Third Circuit LAR 34.1(a)
January 10, 2008

Before: FISHER, HARDIMAN and STAPLETON, *Circuit Judges*.

(Filed: January 23, 2008)


_____

HARDIMAN, *Circuit Judge*.

Plaintiff Mark Walsifer appeals from the District Court's grant of summary judgment on all claims related to the Borough of Belmar's breach of a prior settlement agreement and failure to promote him to police sergeant.

## I.

Because we write for the parties, we repeat only the facts essential to our decision. A patrol officer in the Belmar Police Department, Walsifer was also active in government and politics, serving as a member of Belmar's Board of Education and as an officer of several Republican organizations. Belmar is heavily Democratic, and the Mayor, members of the Borough Council, and Chief of Police were registered Democrats at all times relevant hereto.

In 2002 Walsifer filed suit against the Mayor, the Borough, the Police Department, and former Chief of Police Richard Lynch, alleging discrimination and retaliation for his Republican political activities. That litigation concluded with a stipulation of settlement which provided that Walsifer's past disciplinary record would be expunged and required that the parties would submit any future disciplinary actions to a neutral arbitrator. Despite the stipulation, Lynch failed to expunge Walsifer's disciplinary record. Moreover, Lynch's successor as Chief of Police, Jack Hill, admitted that he had considered Walsifer's pre-stipulation disciplinary record when disciplining him.

In addition to these apparent breaches of the settlement agreement, Hill pursued a number of adverse actions that Walsifer alleges were motivated by his Republican affiliation and activities. For example, Hill accused Walsifer of encouraging a fellow officer, Thomas Cox, to register to vote while on duty in the fall of 2002. Walsifer also allegedly approached a convenience store clerk regarding voter registration. These incidents prompted Hill to issue Walsifer a citation for politicking on duty and to suspend him for ten days, although an arbitrator later reduced the punishment to counseling and a written reprimand. In addition, Hill requested an opinion from the county prosecutor as to whether a police officer who served on Belmar's Board of Education had a conflict of interest. Although Hill asserted that such dual service was "detrimental to the good order and conduct of the Police Department and therefore should be restricted," he did not disclose that he was President of the local Democratic Club.

In early 2003 it became known that a sergeant's position soon would be available in the Belmar Police Department. New Jersey's civil service statute permitted the Department to promote from the top three ranked candidates. Pursuant to a written examination given the previous fall, Walsifer was ranked second, Walsifer's brother was third and Cox was fourth on the list.

In July 2003, Cox played golf with Lynch, Hill, and a retired police captain. According to Walsifer, the New Jersey Department of Personnel regraded the sergeant's examination several days after the round of golf, which resulted in Cox being tied for third with Walsifer's brother. Also on the same day as the round of golf, Hill allegedly

3

observed juveniles committing minor violations during Walsifer's shift and was displeased with the lack of police units on the scene. Hill sent Walsifer a letter suggesting that he was not properly supervising his shift, and followed with a second letter criticizing Walsifer for being unavailable to oversee a domestic disturbance call. At least one of these letters was placed in Walsifer's personnel file, but no formal investigation was initiated. Hill was aware of Walsifer's second-place ranking when he wrote these letters.

In the fall of 2003, Hill and two Borough councilmen, both Democrats, interviewed the four officers eligible for promotion to sergeant. Hill drafted a list of questions prior to the interviews, which were asked of all candidates. Hill also informed the councilmen of the disciplinary record of each candidate. Both councilmen testified that Walsifer interviewed poorly and that Cox — who had a college degree — was clearly the superior candidate. According to Hill, Walsifer's disciplinary record, which included pre-stipulation actions, was also a weakness. Upon Hill's recommendation to the Mayor and Borough Council, Cox was promoted to sergeant in November 2003.

In April 2004 a sergeant's position opened up in Walsifer's squad. Hill ordered Walsifer to serve as the squad's Officer in Charge (OIC) but did not move to fill the sergeant vacancy, which would have been filled from the list on which Walsifer still ranked second.

## II.

The District Court granted summary judgment to Defendants on Walsifer's First

Amendment retaliation claim, finding that Walsifer had failed to produce evidence that his prior lawsuit or Republican affiliation was a substantial factor in any purportedly retaliatory action. The District Court also dismissed Walsifer's equal protection claim, pointing out that Walsifer had received the identical punishment, *i.e.,* a written reprimand, as another officer also charged with "politicking" while on duty. The District Court added that Walsifer had submitted no case law to support his novel argument that a breach of a settlement agreement could constitute a violation of 42 U.S.C. § 1983, that there was no basis for holding the Borough or Police Department liable under *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), and that there was no evidence that Lynch had been personally involved in any of the retaliatory conduct. Finally, the District Court declined to exercise supplemental jurisdiction and dismissed Walsifer's state law claims without prejudice.

Walsifer insists that the Borough failed to promote him in violation of his constitutional rights to equal protection and freedom of speech. The decision to promote someone else rather than Walsifer was made by the Borough Council, and he does not dispute that the Council had the "final authority to establish municipal policy with respect to" the promotion of employees of the police department. *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). It necessarily follows that the Borough can be liable only for conduct of the Council. *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir.

1990).[1] Walsifer's sole complaint with respect to the Council, however, is that it acted on the recommendation of Hill, a recommendation that Walsifer maintains was motivated by discriminatory and retaliatory animus. That, without more, is an inadequate basis for the imposition of municipal liability. *Jett v. Dallas Independent School District*, 798 F.2d 748, 759-60 (5th Cir. 1986). Such liability may be imposed only if the Council's decision was improperly motivated. *Id.* Accordingly, to avoid summary judgment, Walsifer had the burden of coming forward with evidence from which a trier of fact could conclude that the Council knew or believed that Hall's recommendation was motivated by discriminatory or retaliatory animus. *Id.*; *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) ("If the authorized policy makers approve a subordinate's decision and *the basis for it*, their ratification would be chargeable to the municipality") (emphasis supplied). The summary judgment record contains no evidence from which a trier of fact could so conclude.

Turning to the summary judgment in favor of Defendant Lynch, it is well established that he must have had "personal involvement in the alleged wrongdoing" in order to be liable under § 1983 because individual liability "cannot be predicated solely on the operation of *respondeat superior*." *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005). Although Lynch was Belmar Chief of Police when Hill's alleged retaliation

---

[1]"As in past cases, we treat the municipality and its police department as a single entity for purposes of section 1983 liability." *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).

occurred and played a round of golf with Hill shortly before the July 2003 disciplinary actions, these facts fall well short of showing that Lynch *personally* participated, condoned, or even knew of Hill's allegedly improper conduct.

Even if Lynch had participated in or condoned Hill's conduct, Walsifer has failed to demonstrate that Hill's actions were substantially motivated by Walsifer's Republican affiliation. Walsifer's focus on the numerous adverse actions taken by the Defendants, and his manifest disagreement with the merits of those decisions, misses the thrust of the District Court's holding: there is no evidence, other than the fact that the decisionmakers happened to be Democrats, that Walsifer's Republican affiliation motivated any of these actions. He has also failed to undermine Defendants' assertion that Cox was promoted because he had a better interview and was more educated. Walsifer's argument that Defendants' asserted justification is called into question by the purported inability of the councilmen to "explain with specificity" how Cox interviewed better than Walsifer, or their failure to ask specific interview questions about Cox's educational background, is unpersuasive.

Similarly unavailing is Walsifer's argument that his equal protection claim is established by Hill's failure to also discipline Cox for politicking, and his attempt to suspend Walsifer where he had previously issued only a reprimand to a different officer for the same offense. To prevail on his equal protection claim, Walsifer must demonstrate that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the

7

difference in treatment. *Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006). We agree with the District Court that Walsifer and Cox were not similarly situated, as Cox made no effort to encourage other individuals to register to vote and responded only to Walsifer's active solicitation. We also agree that the arbitrator's reduction of Walsifer's punishment to counseling and a written reprimand, the identical punishment received by another officer who previously engaged in politicking, is fatal to his equal protection claim.

Finally, we agree with the District Court that Defendants' apparent violation of the stipulation of settlement cannot serve as the basis of a § 1983 claim, and find that the District Court did not abuse its discretion in declining supplemental jurisdiction under 28 U.S.C. § 1367(c)(3). *Lazorko v. Penn. Hosp.*, 237 F.3d 242, 247 (3d Cir. 2000).

IV.

In sum, although Walsifer may have proferred facts sufficient to support a state law claim for breach of contract, we find no error in the District Court's grant of summary judgment on his federal claims. Accordingly, we will affirm.