NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-4227
_____

TIMOTHY M. THOMAS,

Appellant

v.

DIANA MARIE THOMAS; DAVID M. DOUGHERTY;
DANIEL DIEHL; KATHY JO WINTERBOTTOM; RONALD WEAGLEY

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 1-11-02336)
District Judge: Hon. William W. Caldwell

_____

Submitted under Third Circuit LAR 34.1(a)
June 14, 2013

Before: McKEE, Chief Judge, and AMBRO and GREENBERG, Circuit Judges

(Opinion Filed: June 19, 2013)
_____

OPINION OF THE COURT
_____

GREENBERG, Circuit Judge.

This matter comes on before this Court on appeal from orders of the District Court

entered June 15, 2012, and, after amendment of the complaint, on October 15, 2012,

dismissing appellant Timothy M. Thomas's complaint pursuant to Fed. R. Civ. P.

12(b)(6) against his wife, Diana Marie Thomas, as well as against her father, her attorney, and certain Pennsylvania state troopers. The case arises from matrimonial difficulties between Timothy, a Pennsylvania state trooper, and Diana.

Following his separation from Diana, Timothy brought the complaint in this action against defendants making many claims against them under both state and federal law. The District Court listed the claims in its opinions and we therefore need not describe them except for Timothy's claim against defendant Daniel Diehl, a Pennsylvania state trooper, under 42 U.S.C. § 1983 that we address below. At this point with respect to Timothy's claim against Diehl, we merely set forth that Timothy alleges that Diehl violated Timothy's rights under the Fourteenth Amendment through actions that deprived Timothy of his right to privacy and that infringed on the integrity of his familial relationships. Inasmuch as the District Court found that Timothy's complaint did not state a valid claim for relief under any of the theories that Timothy advanced, it dismissed the action in the orders that we reference above with accompanying opinions.

The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367 and we have jurisdiction under 28 U.S.C. § 1291. We are exercising plenary review on this appeal. See Spruill v. Gillis, 372 F.3d 218, 226 (3d Cir. 2004).

We are in full accord with the result that the District Court reached and will affirm its orders essentially for the reasons that it set forth in its opinions except that in one respect we will affirm its order for different reasons. In Timothy's complaint he claims that Diana demanded that he leave their marital home and that he "complied with her

2

demands." App. at 42. He then indicates that she called Diehl, who was on duty at the Pennsylvania state police barracks in Chambersburg, "after she had forced [plaintiff] to leave the family home." Id. at 42-43. According to Timothy, Diehl then told Diana to leave the family home and go to her parents' home in Upper Uwchlan Township, Pennsylvania. Timothy alleges that Diehl then called the Upper Uwchlan police with baseless claims that Timothy was a "loose cannon" and a "prime candidate for murder/suicide." Id. at 43. Timothy alleges that as a consequence of Diehl's actions the Upper Uwchlan police surrounded Diana's parents' residence, thereby "humiliat[ing] and embarrass[ing him.]" Id. at 44. Timothy then charges that Diehl unjustifiably, "engaged in a policy designed to divide the Thomas's and destroy the relationship that held the family together [and] intentionally created an inaccurate and pernicious group of communications and accusations that were intended to create a matrix of domestic relations impediments to communication and any possible resolution of the differences between the Thomas'." Id.

After reviewing the complaint the District Court indicated that "[n]ot all acts of an on-duty state employee [are] state action for the purposes of [42 U.S.C.] section 1983," and that "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law," citing Bonenberger v. Plymouth Twp., 132 F.3d 20, 24 (3d Cir. 1997), and Barna v. City of Perth Amboy, 42 F.3d 809, 816 (3d Cir. 1994). App. at 29. The District Court then indicated that "when Diehl contacted the Upper Uwchlan Township Police, he did not do so under color of

3

state law [and a]s Diehl points out, anyone could have called the local police and made the same statements. Diehl's status as a state trooper did not make the call possible." Id. at 30. Thus, the Court believed that Timothy's "1983 claim against [Diehl] fails for lack of action under color of state law." Id.

We reject the District Court's analysis on this point though we agree with its result. It is true that if Diana had called a private friend to report the problem between Timothy and her that she described to Diehl and the friend had made a call to the Upper Uwchlan police requesting the protection that the police in that municipality provided, there would not have been a basis for a viable section 1983 claim against the friend, for he would not have been acting under color of state law in making the call. But when an on-duty state trooper makes a call from his barracks reporting a potentially dangerous situation to a local police department, surely he is acting in his capacity as a police officer and therefore he is acting under color of state law for the purpose of a 42 U.S.C. § 1983 action against him.

Notwithstanding our rejection of the District Court's reasoning, we see no reason to reverse its order with respect to Diehl. We, of course, can affirm an order of a district court if we agree with the substance of the order even if we do not agree with the court's reasoning in reaching its result. See, e.g., Nugent v. Ashcroft, 367 F.3d 162, 168 (3d Cir. 2004). In this case it is evident from the complaint that, when Diana called him, Diehl was confronted with what seemed to be a potentially volatile situation. Indeed, the complaint alleges that when Diehl told Diana to flee the family home he was doing so in

agreement with her. Consequently, the fair inference to be drawn from the complaint is that Diana had determined to leave the marital premises before she spoke to Diehl. In any event, regardless of Diana's intentions before she called Diehl, when she called him and described the volatile situation that she faced Diehl reasonably could have believed that she was in a particularly dangerous position because Diehl knew that Timothy had access to firearms. At that point, it was perfectly appropriate for Diehl to notify the Upper Uwchlan police of a potential problem so that they could take protective steps. Surely such actions by Diehl could not give rise to his liability under 42 U.S.C. § 1983, as he did nothing wrong. In reaching our conclusion, we observe that our experience causes us to understand that it is not unusual after a tragic event to learn that persons in positions of authority were aware of the dangerous situation that later led to that event but did not take steps to prevent that outcome from happening. Here Diehl did not have to sit inertly in the Chambersburg barracks after he received Diana's call and hope for the best.

We also point out that Timothy's complaint against Diehl must fail because the claim of damages that Timothy attributes to Diehl's action is implausible on its face. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007). According to Timothy's complaint, "Diehl engaged in a policy designed to divide the Thomas's and destroy the relationship that held the family together" and made accusations "that were intended to create a matrix of domestic relations impediments to communication and any possible resolution of the differences between the Thomas'." App. at 44. Thus, Timothy is attributing the collapse of his marriage to Diana to Diehl's

5

intervention. But the complaint alleges that Diana demanded that Timothy leave the family premises before she talked to Diehl. Moreover, as we already have indicated, we draw an inference from the complaint that Diana intended to flee the premises before she talked to Diehl. In any event, even if Diana would not have left the premises if she had not talked to Diehl, it is hardly plausible to suggest that Diehl caused the breakdown of the marriage.

For the foregoing reasons and for the reasons the District Court set forth, we will affirm the orders of June 15, 2012, and October 15, 2012.