Antonia GARCIA

v.

NEWTOWN TOWNSHIP, Joseph Czajkowski, Thomas Jirele, Philip Calabro, Michael Gallagher and Jerry Schenkman.

Civil Action No. 09–CV–3809.

United States District Court, E.D. Pennsylvania.

June 10, 2011.

Brian M. Puricelli, Newtown, PA, for Antonia Garcia.

Carla P. Maresca, Obinna I. Abara, Rufus A. Jennings, Sheryl L. Brown, Deasey, Mahoney, Valentini, North Ltd., Philadelphia, PA, for Newtown Township, Joseph Czajkowski, Thomas Jirele, Philip Calabro, Michael Gallagher and Jerry Schenkman.

## MEMORANDUM AND ORDER

JOYNER, Chief Judge.

This civil action is again before this Court on Motion of the Defendants for the entry of Summary Judgment in their favor pursuant to Fed.R.Civ.P. 56 (Doc. No. 52). For the reasons discussed below, the motion shall be granted nearly in full.

### Statement of Relevant Facts

On June 30, 2007, Plaintiff, Antonia Garcia, was hired by then-Acting Township Manager John Boyle for the position of Administrative Assistant to the Newtown Township Manager in Bucks County, Pennsylvania. The position was full-time and Plaintiff was paid $43,000 per annum plus retirement and other benefits, including health insurance coverage. At the time of her hire, Plaintiff was fifty years of age. Plaintiff's employment was subsequently terminated on September 5, 2008 by Defendant Joseph Czajkowski, who had been hired as Township Manager in December of the preceding year.[1] Plaintiff contends that she was unlawfully discriminated against in the terms and conditions of her employment and unlawfully terminated from her position on the basis of her sex, age and race and in retaliation for exercising her First Amendment right to freedom of speech. Plaintiff thus brought suit under 42 U.S.C. § 1983, Title VII, 42 U.S.C. § 2000e, the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 624, et seq., and the Pennsylvania Human Relations Act, ("PHRA"), 43 P.S. § 951, et seq. against the Township of Newtown and the individual members of its Board of Supervisors (Defendants Jirele, Ciervo, Calabro, Gallagher and Schenkman) and Joseph Czajkowski.[2]

---

1. Upon Mr. Czajkowski's hiring, Mr. Boyle resumed his previous position of Assistant Township Manager.

2. Originally, Plaintiff's complaint also contained claims for deprivation of her liberty

interest and her rights to equal protection of the law, conspiracy and punitive damages. On March 2, 2010, this Court partially grant-

Discovery in this matter has now been completed and Defendants' seek the entry of judgment in their favor as a matter of law on all of the remaining claims against them pursuant to Fed.R.Civ.P. 56.

### Standards for Ruling on Summary Judgment Motions

Under Fed.R.Civ.P. 56(a),

A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

At the summary judgment stage, a court views the facts in the light most favorable to the non-moving party and the "judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Mollo v. Passaic Valley Sewerage Commissioners,* 406 Fed.Appx. 664, 667 (3d Cir.2011) (quoting *Pearson v. Component Technology Corp.,* 247 F.3d 471, 482 (3d Cir.2001)). An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law. *Kaucher v. County of Bucks,* 455 F.3d 418, 423 (3d Cir.2006), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the non-moving party bears the

burden of persuasion at trial, "the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden." *Id.,* quoting *Wetzel v. Tucker,* 139 F.3d 380, 383 n. 2 (3d Cir.1998). "The mere existence of some evidence in support of the nonmovant is insufficient to deny a motion for summary judgment; enough evidence must exist to enable a jury to reasonably find for the nonmovant on the issue." *Renchenski v. Williams,* 622 F.3d 315, 324 (3d Cir.2010) (quoting *Giles v. Kearney,* 571 F.3d 318, 322 (3d Cir.2009)).

### Discussion

#### A. First Amendment Retaliation

In Count One of her complaint, Plaintiff seeks monetary damages for the defendants' purported retaliation against her for exercising her First Amendment right to free speech. Specifically, Ms. Garcia asserts that prior to her termination in September, 2008, she had "spoken out on matters of public concern about the Defendant Township, such as sex discrimination by Township supervisor (sic) personnel and supervisors engaging in personal matters on taxpayer time (while being paid)." (Pl.'s Complaint, ¶ 14).

Although it had previously been the general rule that a public employee had no right to object to conditions placed upon the terms of his or her employment, including those which restricted the exercise of constitutional rights, the Supreme Court has since made clear that public employees do not surrender all of their First Amendment rights by reason of their employ-

---

ed the defendants' motion to dismiss and thus the claims which remain are as follows: First Amendment Retaliation under § 1983 (Count I), Violation of Right to Due Process for deprivation of property interest under § 1983 (Count II), § 1983 *Monell* claim against New-

town Township (Count III), Title VII and ADEA claim against Defendant Czajkowski and Newtown Township(Count IV) and PHRA claim against Defendant Czajkowski and Newtown Township (Count V).

ment. *Garcetti v. Ceballos,* 547 U.S. 410, 126 S.Ct. 1951, 1957, 164 L.Ed.2d 689 (2006) (citing, *inter alia, Pickering v. Board of Education of Township High School Dist. 205, Will Cty.,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), *Connick v. Myers,* 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983) and *Rankin v. McPherson,* 483 U.S. 378, 384, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)).[3] Indeed, the Court has recognized the right of employees to speak on matters of public concern[4], typically matters concerning government policies that are of interest to the public at large, a subject on which public employees are uniquely qualified to comment. *City of San Diego, California v. Roe,* 543 U.S. 77, 80, 125 S.Ct. 521, 523–524, 160 L.Ed.2d 410 (2004). Outside of this category, the Court has held that when government employees speak or write on their own time on topics unrelated to their employment, the speech can have First Amendment protection, absent some governmental justification "far stronger than mere speculation" in regulating it. *Id.* (quoting *United States v.*

*Treasury Employees,* 513 U.S. 454, 465, 475, 115 S.Ct. 1003, 130 L.Ed.2d 964 (1995)).

It is noteworthy that the protections granted by the First Amendment are not absolute. " 'From 1791 to the present,' the First Amendment has 'permitted restrictions upon the content of speech in a few limited areas,' and has never 'included a freedom to disregard these traditional limitations,' " among which are speech which is obscene, fraudulent, defamatory, incites violence and/or is integral to criminal conduct. *United States v. Stevens,* —— U.S. ——, 130 S.Ct. 1577, 1584, 176 L.Ed.2d 435, 443–444 (2010) (quoting, *inter alia, United States v. Playboy Entertainment Group,* 529 U.S. 803, 817, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000); *R.A.V. v. St. Paul,* 505 U.S. 377, 382–383, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992); *Virginia Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.,* 425 U.S. 748, 771, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Brandenburg v. Ohio,* 395 U.S. 444, 447–449, 89 S.Ct. 1827, 23 L.Ed.2d 430 (1969); *Roth v. Unit-*

---

**3.** Specifically, the First Amendment provides in relevant part: "Congress shall make no law ... abridging the freedom of speech ..."

Of course, in filing the instant lawsuit against the Township and its five-member governing Board of Supervisors, Plaintiff has invoked § 1983, which provides as follows in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, ...

This statute "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred." *Elmore v. Cleary,* 399 F.3d 279, 281 (3d Cir.2005) (quoting *Baker v. McCollan,* 443 U.S. 137, 145, n.

3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). To establish liability under § 1983, a plaintiff must show that the defendants, acting under color of law, violated the plaintiff's federal constitutional or statutory rights, and thereby caused the complained-of injury. *Id.* (citing *Sameric Corp. of Delaware v. City of Philadelphia,* 142 F.3d 582, 590 (3d Cir.1998)).

**4.** Speech deals with a matter of public concern when it can "be fairly considered as relating to any matter of political, social, or other concern to the community," or when it "is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Snyder v. Phelps,* —— U.S. ——, 131 S.Ct. 1207, 1215–1216, 179 L.Ed.2d 172 (2011) (quoting *San Diego, supra,* 543 U.S. at 83–84, 125 S.Ct. 521 and *Connick, supra,* 461 U.S. at 146, 103 S.Ct. 1684). The arguably "inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern." *Id.* (quoting *Rankin, supra,* at 387, 107 S.Ct. 2891).

*ed States,* 354 U.S. 476, 483, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957); *Beauharnais v. Illinois,* 343 U.S. 250, 254–255, 72 S.Ct. 725, 96 L.Ed. 919 (1952)); *Policastro v. Tenafly Board of Education,* 710 F.Supp.2d 495, 503–504 (D.N.J.2010).

"To reconcile the employee's right to engage in speech and the government employer's right to protect its own legitimate interests in performing its mission, the [Supreme] Court [in *Pickering, supra.*] adopted a balancing test," which requires a court evaluating restraints on a public employee's speech to balance " 'the interests of the employee as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.' " *San Diego,* 543 U.S. at 82, 125 S.Ct. at 524–525 (quoting *Pickering,* 391 U.S. at 568, 88 S.Ct. 1731); *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2896–2897; and (*Connick,* 461 U.S. at 140, 103 S.Ct. at 1686). *See Also, Beckinger v. Township of Elizabeth,* 697 F.Supp.2d 610, 622 (W.D.Pa.2010) ("Where implicated, the interest of the employee in speaking as a citizen on a matter of public concern must be weighed against the employer's interest in promoting the efficiency of the public services it performs through its employees").

■ The threshold question in applying the *Pickering* balancing test is whether the employee's speech may be "fairly characterized as constituting speech on a matter of public concern." *Rankin,* 483 U.S. at 384, 107 S.Ct. at 2897 (quoting *Connick,* 461 U.S. at 146, 103 S.Ct. at 1689). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement as revealed by the whole record." *Id.* (quoting *Connick,* 461 U.S. at 147–148, 103 S.Ct. at 1690); *Beyer v. Duncannon Borough,* 428 Fed.Appx. 149, 154

(3d Cir.2011). "As in other First Amendment cases, the court is obligated 'to make an independent examination of the whole record' in order to make sure that the 'judgment does not constitute a forbidden intrusion on the field of free expression.' " *Snyder,* 131 S.Ct. at 1216 (quoting *Bose Corp. v. Consumers Union of United States, Inc.,* 466 U.S. 485, 499, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984) and *New York Times Co. v. Sullivan,* 376 U.S. 254, 284–286, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)). "In considering content, form, and context, no factor is dispositive, and it is necessary to evaluate all the circumstances of the speech, including what was said, where it was said, and how it was said." *Id.*

■ Once done, the court must then ascertain whether it may read the complaint as alleging that the employee was speaking as a "citizen." *Beyer,* at 153. "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti,* 126 S.Ct. at 1960. "[T]he 'proper inquiry' into what are an individual's official duties 'is a practical one' " such that " '[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform.' " *Gorum v. Sessoms,* 561 F.3d 179, 185 (3d Cir. 2009) (quoting *Garcetti,* 547 U.S. at 424, 126 S.Ct. 1951). Instead, "a claimant's speech might be considered part of his official duties if it relates to 'special knowledge' or 'experience' acquired through his job." *Id.* (citing *Foraker v. Chaffinch,* 501 F.3d 231, 240 (3d Cir. 2007)).

■ To summarize, in order to state a First Amendment retaliation claim, a public employee plaintiff must show (1) that his activity is protected by the First

Amendment, and (2) that the protected activity was a substantial factor in the alleged retaliatory action. *Knight v. Drye*, 375 Fed.Appx. 280 (3d Cir.2010); *Gorum*, 561 F.3d at 184; *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir.2006). The first factor is a question of law; the second factor is a question of fact. *Hill, supra.* (citing *Curinga v. City of Clairton*, 357 F.3d 305, 310 (3d Cir.2004)). If these two elements are satisfied, the burden shifts to the defendants to demonstrate that the same action would occur if the speech had not occurred. *Gorum*, at 184; *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005). "A public employee's statement is protected activity when (1) in making it, the employee spoke as a citizen, (2) the statement concerned a matter of public concern, and (3) the government employer did not have an 'adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made.'" *Hill v. Kutztown*, 455 F.3d at 241–242 (quoting *Garcetti*, 126 S.Ct. at 1958). The content of the speech may also help to characterize it as relating to a matter of social or political concern of the community if, for example, the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. *Holder v. City of Allentown*, 987 F.2d 188, 195 (3d Cir.1993) (quoting *Connick*, 461 U.S. at 148, 103 S.Ct. 1684). Thus, "speech disclosing public officials' misfeasance is protected while speech intended to air personal grievances is not." *Swineford v. Snyder County, PA.*, 15 F.3d 1258, 1271 (3d Cir.1994). *In accord, Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir.2001).

Applying these precepts to the case at hand, it appears from the record that Plaintiff is basing her First Amendment retaliation claim on: (1) her refusal to continue to accompany Assistant Township Manager John Boyle and one of her co-workers, Pat Davidson, when they went out for drinks after work and/or to lunch because she was opposed to their having an affair when and while they were married to other people; (2) her observations that Mr. Czajkowski and Mr. Boyle were "never . . . at work;" and (3) Mr. Czajkowski's failure to address her complaint that she was being discriminated and retaliated against and harassed by Mr. Boyle and Ms. Davidson. (Pl.'s Deposition, pp. 90–93, 104–139).

■ There is no evidence on this record, however, that Ms. Garcia ever spoke to anyone about the relationship between Mr. Boyle and Ms. Davidson except for informing Ms. Davidson that she "didn't feel right about" accompanying them for drinks or meals and that she therefore "wasn't going to do it anymore." (Pl's Dep., pp. 107–110; Dep. of J. Czajkowski, pp. 83). While it does appear that Mr. Boyle violated the Township's "no fraternization" policy by engaging in an inappropriate relationship with Ms. Davidson, we cannot find that Plaintiff's declaration of personal discomfort to Ms. Davidson constituted First Amendment-protected speech. Summary judgment shall therefore be granted insofar as this aspect of Count One is concerned.

We reach the same conclusion with respect to Ms. Garcia's complaint about the way she was being treated in the workplace by Mr. Boyle and Ms. Davidson after she advised Ms. Davidson that she no longer wished to join them for drinks and lunch outside of the office. Indeed, Ms. Garcia did not speak publicly about the evils of discrimination and/or harassment in general; rather she complained privately about wrongdoing that she herself had suffered. (Pl's Dep., pp. 117–135; Dep. of Jerry Schenkman, pp. 13–20).

"This conversation, while protected under Title VII, has little or no 'instrumental value to the community in enabling self-governance,' and thus does not appear to have addressed a matter of sufficient public concern to warrant First Amendment protection." *Zelinski v. Pennsylvania State Police,* 108 Fed.Appx. 700, 708 (3d Cir.2004) (quoting *Azzaro v. County of Allegheny,* 110 F.3d 968, 977 (3d Cir.1997)). Hence, summary judgment shall be granted on this point as well.

■ We reach a different conclusion with regard to the matter of Plaintiff's remark about the work ethics of Messrs. Czajkowski and Boyle. The evidence of record on this point, while scant, does reflect that in addition to informing several of the individual members of the Township Board of Supervisors and managers from other Townships that Mr. Czajkowski and Mr. Boyle "were never there," Ms. Garcia also discussed this with two friends who lived in Newtown. (Pl's Dep., pp. 134–142, 227–228; Schenkman Dep., p. 19). Certainly, it is conceivable that the general public would have concerns as to whether its township officials are in fact performing the work which they are paid to do. We therefore find that plaintiff's speech on this matter is entitled to First Amendment protection. Moreover, given Plaintiff's testimony that Mr. Czajkowski issued her a written employment evaluation cautioning her to "keep everything internal" and "confidential" just one week after Plaintiff raised her concerns with Township Supervisor Schenkman, a genuine issue of material fact exists as to whether Plaintiff's termination some 3 months later was retaliatory or whether it would have occurred anyway because of Plaintiff's purportedly poor job performance. *See, e.g., Marra v. Philadelphia Housing Authority,* 497 F.3d 286, 302 (3d Cir.2007) (holding that "[i]n certain narrow circumstances, 'unusually suggestive' proximity in time between protected activity and the adverse action may be sufficient on its own, to establish the requisite causal connection.") (internal citations omitted). We thus shall grant the defendants' motion for summary judgment on Count One of the Complaint in all respects save with regard to this one statement.

### B. Count Two—Violation of Due Process/Property Interest

As noted, Plaintiff's sole remaining claim in Count Two of the complaint is that Defendants' termination of her employment effectively deprived her of property without due process of law. There being no evidence to support this claim, summary judgment on Count Two shall likewise now be entered in its entirety.

The Fourteenth Amendment to the United States Constitution forbids "any state" to "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. "The first step in analyzing a due process claim is to determine whether the 'asserted individual interest is encompassed within the Fourteenth Amendment's protection of life, liberty, or property.'" *Elmore,* 399 F.3d at 282 (quoting *Alvin v. Suzuki,* 227 F.3d 107, 116 (3d Cir.2000)). The Third Circuit has explained that "a plaintiff ... who seeks to establish a procedural due process claim must demonstrate that '(1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of life, liberty, or property,' and (2) that the procedures available to him did not provide 'due process of law.'" *Biliski v. Red Clay Consolidated School District Board of Education,* 574 F.3d 214, 219 (3d Cir.2009) (quoting *Hill v. Kutztown,* 455 F.3d at 234).

"To have a property interest in a job, a person must have more than a unilateral

expectation of continued employment; rather, she must have a legitimate entitlement to such continued employment." *Id.* (citing *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). "As a result, an at-will employee has 'no property interest in his or her job sufficient to trigger due process concerns.'" *Id.* (quoting *Elmore, supra.*, and *Bishop v. Wood*, 426 U.S. 341, 346 n. 8, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976)).

■■■ Since state law creates the property rights protected by the Fourteenth Amendment, we look to the law of Pennsylvania to determine whether Ms. Garcia has a legitimate property interest in her job with Newtown Township. *Hill v. Kutztown*, 455 F.3d at 234; *Kelly v. Borough of Sayreville*, 107 F.3d 1073, 1077 (3d Cir.1997). Pennsylvania has long adhered to the doctrine of "employment at-will." *See, e.g.*, *Weaver v. Harpster*, 601 Pa. 488, 492 n. 3, 975 A.2d 555, 557 n. 3 (2009); *Geary v. United States Steel Corp.*, 456 Pa. 171, 176, 319 A.2d 174, 175 (1974). In essence, the at-will employment doctrine provides that, absent a statutory or contractual provision to the contrary, the employer and employee each have the power to terminate the employment relationship for any or no reason. *Id.* Exceptions to this general rule have been recognized in only very limited circumstances such as where discharge of an at-will employee would threaten clear mandates of public policy. *Id.*, citing *Geary*, 319 A.2d at 180; *Knox v. Board of School Directors of Susquenita School District*, 585 Pa. 171, 183, 888 A.2d 640, 647–648 (2005). And, "this general rule is not abrogated just because the employee is a governmental worker since one does not have a *per se* right in governmental employment." *Knox, id.*,

(quoting *Pipkin v. Pennsylvania State Police*, 548 Pa. 1, 693 A.2d 190, 191 (1997)).[5]

■■■ Further, "[i]n Pennsylvania, only two types of contracts give rise to a legitimate expectation of continued employment." *Walters v. Washington County*, 415 Fed.Appx. 374, 377 (3d Cir.2011). "'The first is a contract that confers a protected status, such as a tenure contract providing for permanent employment. The second is a contract explicitly providing that it may be terminated only for cause.'" *Id.* (quoting *Sanguigni v. Pittsburgh Board of Public Education*, 968 F.2d 393, 401 (3d Cir.1992)). In other words, a clear and definite intention to overcome the presumption of at-will employment must be expressed in the contract. *Rutherfoord v. Presbyterian–University Hospital*, 417 Pa.Super. 316, 323, 612 A.2d 500, 503 (1992) (citing *Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334 (1988) and *Veno v. Meredith*, 357 Pa.Super. 85, 515 A.2d 571 (1986)).

■■■ In this case, it appears that Plaintiff relies upon the offer letter which she received from then-Acting Township Manager Boyle dated June 30, 2007 as support for the instant due process claim. Specifically, this letter outlined the terms and conditions for Plaintiff's employment including her salary, benefits and paid time off, her work days and hours and stated that she was "expected to read and understand Part 7 of the Newtown Township Administrative Code of 2000, titled the 'Employee Relations Manual,'" otherwise known as the township's personnel policy. The offer letter says only that Plaintiff's position is classified as "an exempt, salaried position under the terms of the Fair Labor Standards Act," that "[t]here will be

---

5. Under Section 7H(1)(h) of the Newtown Township Administrative Code (Employee Relations Manual), "[t]he Township Manager may dismiss any employee. Dismissal is the maximum administrative discipline." (Plaintiff's Summary Judgment Exhibit "3").

a six-month probationary period and a performance review at that time ...," after which the plaintiff would be "subject to performance reviews annually and will be considered for wage adjustments as of January 1st each year." A copy of the personnel policy was enclosed with this letter and the letter concluded with:

"[i]f the terms and conditions as outlined above are consistent with your understanding of the position being offered, I request that you sign the acknowledgment and return this letter to my office. A copy has been provided for your records."

It further appears that Ms. Garcia signed, dated and returned the acknowledgment as requested. (Plaintiff's Summary Judgment Exhibit "1"; Defendant's Exhibit "E" to Motion for Summary Judgment). Nowhere in the letter, however, is there **any** mention of the duration of Plaintiff's employment, nor is there any indication that her employment was permanent or that it could be terminated only for cause. And, Part 7E, Section 9 of the enclosed Township Personnel Policy clearly states as follows:

*Employment at Will*

It is the policy of the Township that all employees who do not have a written employment agreement or do not work under a labor agreement or contract, are employed at the will of the Township for an indefinite period. Employees may resign from the Township after proper notice and may be terminated by the Township at any time, for any reason, with or without notice. No Township representative is authorized to modify this policy for any employee or to enter any agreement contrary to this policy. Completion of a probationary period or conferral of regular full time status shall not change an employee's status as an employee-at-will or in any way restrict the Township's right to terminate such an employee. Nothing contained in this manual, employee handbooks, employment applications, Township memoranda, employment letters or other materials provided to employees in connection with their employment shall restrict the Township's right to terminate an employee at any time or for any reason. These documents shall not create an express or implied contract of employment for a definite period.

(Exhibit "F" to Defendant's Motion for Summary Judgment).

Thus we conclude that, notwithstanding her arguments to the contrary, Ms. Garcia did *not* have an employment contract and she in fact was an employee at-will under Pennsylvania law. As such, Plaintiff did not have a property interest in her employment entitling her to due process protection.[6] She therefore does not have a valid claim for violation of her rights under the Fourteenth Amendment and Newtown Township is entitled to judgment in its

6. The Township Personnel Policy does contain a Grievance Procedure for its employees who think that they have not been treated fairly at Section 6c. Paragraph 9 of § 6c reads:

Employees not subject to labor agreements may request a hearing of the Board of Supervisors as described in this Administrative Code, in the event of a suspension in excess of 10 working days and dismissal. Board of Supervisors decisions in such maters (sic) are final.

Although Ms. Garcia clearly requested a hearing before the full Board of Supervisors in writing and orally, the Township never granted her one. (Plaintiff's Summary Judgment Exhibits 4, 5 and 6). Inasmuch as we do not read the Township Administrative Code as requiring the Board to grant a hearing if requested and because the plaintiff does not possess a property right in her employment, we do not find that the refusal to grant the plaintiff a hearing gives rise to a due process violation in any event.

favor as a matter of law on Count Two of the Complaint in its entirety.

### C. Plaintiff's Discrimination Claims: Counts Four and Five (Mislabeled as second Count Three and Four)

In Counts Four and Five, Ms. Garcia claims that the defendants discriminated and retaliated against her in the terms and conditions of her employment and terminated her because of her age, sex, race and/or national origin in violation of Title VII, 42 U.S.C. § 2000e, *et seq.*, the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621, *et seq.* and the Pennsylvania Human Relations Act, ("PHRA"), 43 P.S. § 951, et seq.[7]

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq., as amended,* prohibits employers from failing or refusing to hire or discharging any individual or otherwise discriminating against an individual employee "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The language of the ADEA, 29 U.S.C. § 623(a) similarly renders it unlawful for an employer:

(1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise

adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this Act.

The Pennsylvania Human Relations Act, 43 P.S. § 955(a) likewise declares that it is an

"unlawful discriminatory practice, unless based upon a bona fide occupational qualification, or in the case of a fraternal corporation or association, unless based upon membership in such association or corporation, or except where based upon applicable security regulations established by the United States or the Commonwealth of Pennsylvania: for any employer ... to refuse to hire or employ or contract with, or to bar or to discharge from employment such individual or independent contractor, or to otherwise discriminate. against such individual or independent contractor with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract, if the individual or independent contractor is the best able and most competent to perform the services required," "because of ... race, color, religious creed, ancestry, age, sex, national origin or non-job related handicap or disability or the use of a guide or support animal ..."

By virtue of the foregoing language, it appears clear that these statutes prohibit both intentional discrimination (known as "disparate treatment") as well as, in some cases, practices that are not intended to discriminate but in fact have a disproportionately adverse effect on minorities (known as "disparate impact").[8] *See, e.g.,*

---

**7.** This Court having granted that part of Defendants' Motion to Dismiss Counts Four and Five against the individual members of the Newtown Township Board of Supervisors, only Plaintiff's claims against the Township itself and Manager Joseph Czajkowski remain.

**8.** *Stated otherwise,* disparate impact claims "involve employment practices that are facially neutral in their treatment of different

*Ricci v. DeStefano*, 557 U.S. 557, 129 S.Ct. 2658, 2672, 174 L.Ed.2d 490 (2009) (interpreting Title VII); *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005) (holding that ADEA authorizes disparate impact claims).

It has been said that disparate treatment cases present "the most easily understood type of discrimination," and occur where an employer[9] has "treated a particular person less favorably than others because of" a protected trait. *Id.* (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 985–986, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) and *Teamsters v. United States*, 431 U.S. 324, 335, n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). When a plaintiff alleges disparate treatment, "liability depends on whether the protected trait actually motivated the employer's decision," and "had a determinative influence on the outcome." *Kentucky Retirement Systems v. E.E.O.C.*, 554 U.S. 135, 128 S.Ct. 2361, 2366, 171 L.Ed.2d 322 (2008); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141, 120 S.Ct.

2097, 147 L.Ed.2d 105 (2000) (both quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993)).

It is axiomatic that a plaintiff can sustain an employment discrimination claim through a presentation of either direct evidence of discrimination or indirect evidence. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989); *Fasold v. Justice*, 409 F.3d 178, 184 (3d Cir.2005). In the absence of direct evidence of discrimination, Title VII and ADEA discrimination claims must be analyzed according to the burden-shifting framework set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Reeves*, 530 U.S. at 142, 120 S.Ct. at 2105; *Sarullo v. U.S. Postal Service*, 352 F.3d 789, 797 (3d Cir.2003). *See Also, St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (clarifying *McDonnell Douglas* standard); *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 121, 105 S.Ct. 613,

---

groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity. Proof of discriminatory motive ... is not required under a disparate impact theory." *Hazen Paper Co., infra.*, 507 U.S. at 609, 113 S.Ct. at 1705–1706 (quoting *Teamsters v. United States*, 431 U.S. 324, 335–336, n. 15, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)).

**9.** "Employer" is defined under Title VII as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such person ..." 42 U.S.C. § 2000e(b). Under the PHRA, "[t]he term 'employer' includes the Commonwealth or any political subdivision or board, department, commission or school district thereof and any person employing four or more persons within the Commonwealth ..." 43 P.S. § 954(b). Individual employees may

not be held liable under Title VII, *See generally, Kachmar v. SunGard Data Systems*, 109 F.3d 173, 184 (3d Cir.1997); *Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061, 1077–1078 (3d Cir.1996); nor under the PHRA, except that an individual employee may be subject to liability under the PHRA if he or she aids or abets an unlawful discriminatory act. *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir.1996); *Elskamp v. Penn–Delco School District*, 2011 WL 1884010 at *3 n. 4, 2011 U.S. Dist. LEXIS 53275 at *11 n. 4 (E.D.Pa. May 18, 2011). In light of this, we are required to enter summary judgment in favor of Mr. Czajkowski on Plaintiff's claims under Title VII. Insofar as it appears that Ms. Garcia asserts that Mr. Czajkowski "aided and abetted" Mr. Boyle's acts of discrimination by failing to address and/or take appropriate action to investigate and/or address them, we decline to grant summary judgment in his favor with respect to the PHRA claims on this basis.

621–22, 83 L.Ed.2d 523 (1985) ("*McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination"); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (also clarifying *McDonnell Douglas* standard). The same analysis applies to discrimination cases brought under the PHRA. *Wilson v. Mobilex USA, Inc.,* 406 Fed.Appx. 625, 626–27 (3d Cir.2011); *Kelly v. Drexel University,* 94 F.3d 102, 105 (3d Cir.1996). *See also, Fogleman v. Mercy Hospital,* 283 F.3d 561, 567 (3d Cir.2002) ("[W]e have held that the PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently.")

Under *McDonnell Douglas,* a plaintiff first must provide adequate evidence of a prima facie case of discrimination, showing that: (1) he is a member of a protected class; (2) he is qualified for the position in question; (3) he suffered an adverse employment action; and (4) his employer sought to fill the position with a similarly qualified individual who was not a member of the plaintiff's protected class. *Andes v. New Jersey City University,* 419 Fed. Appx. 230, 232 (3d Cir.2011) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824). Once the plaintiff satisfies these elements, the burden of production shifts to the employer to identify a legitimate, non-discriminatory reason for the adverse employment action. *Smith v. Allentown,* 589 F.3d 684, 690 (3d Cir.2009) (citing *Keller v. Orix Credit Alliance, Inc.,* 130 F.3d 1101, 1108 (3d Cir.1997)). This burden is "relatively light, and the employer need only 'introduce evidence which,

taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision.'" *Tomasso v. Boeing Co.,* 445 F.3d 702, 706 (3d Cir.2006) (quoting *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994)). "If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Smith, supra,* (citing *Starceski v. Westinghouse Electric Corp.,* 54 F.3d 1089, 1095, n. 4 (3d Cir.1995)). In this regard, "the employee need not always offer evidence sufficient to discredit all of the rationales advanced by the employer." *Tomasso,* 445 F.3d at 707. Indeed, "[i]f the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." *Id,* (quoting *Fuentes,* 32 F.3d at 764 n. 7). At all times, however, the burden of persuasion rests with the plaintiff. *Smith,* at 690; *Fasold,* 409 F.3d at 184.

At the outset, we note that there is no direct evidence of discrimination on the record before us. As a result, we must apply the *McDonnell Douglas* paradigm and in so doing, we find that the record adequately supports the establishment of a prima facie case of discrimination. First, Plaintiff is a female whose father hailed from Spain.[10] She was over fifty years of age at the time her employment was terminated. Second, Plaintiff was arguably qualified for the position of Administrative Assistant, in that she has a Bachelor's Degree in Journalism from Temple University and a paralegal certificate from

---

**10.** Inasmuch as Spain is located in Southwestern Europe and Plaintiff's mother was of English/Irish/Scotch–Welsh descent, Plaintiff's minority status is dubious given that she is Caucasian and the racial origins of the

other Newtown Township employees and most particularly her immediate supervisors are Caucasian European. For purposes of our analysis on this point, however, we give Plaintiff the benefit of the doubt.

Bucks County Community College and she held the job for approximately 1½ years before suffering the adverse employment action at issue, *to wit,* termination. Finally, the record demonstrates that the woman whom the Township later hired to replace Plaintiff in the position is in her early thirties.

Accordingly, the burden of proof shifts to Newtown Township to show that Plaintiff was terminated for a valid, non-discriminatory reason. To that end, both Mr. Czajkowski and Mr. Boyle testified that Ms. Garcia was terminated from her employment because she was careless and made spelling and formatting mistakes in her preparation of meeting agendas, failed to pay attention to detail in her work, failed to make her boss' priorities her priorities and had difficulty understanding her co-workers' personalities and working with her co-workers. (Boyle Dep., pp. 45–51; Czajkowski Dep.,41–42, 47–49). Elaine Gibbs, the Township Finance Director testified that she had heard a number of complaints from several other women who worked in the Township office with Plaintiff that Plaintiff was asking them questions about how to do her job. (Gibbs Dep., pp. 9–17). This testimony is sufficient to rebut the *prima facie* case and thus the burden returns to Plaintiff to demonstrate that this explanation is a pretext for discrimination.

■ After very carefully scrutinizing the record here, we cannot find that Plaintiff has adduced sufficient evidence of pretext to satisfy her burden. Again,

> "a plaintiff who has made out a *prima facie* case may defeat a motion for summary judgment by *either* (i) discrediting the proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative

cause of the adverse employment action. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994). (internal citation omitted) In other words, if the aggrieved employee can raise evidence sufficient 'to discredit the employer's proffered reasons ... the employee need not also come forward with additional evidence of discrimination beyond his ... *prima facie* case in order to survive summary judgment.' "

*Fasold v. Justice,* 409 F.3d at 185 (quoting *Fuentes,* 32 F.3d at 764, and citing *Reeves,* 530 U.S. at 148, 120 S.Ct. 2097 and *Sheridan,* 100 F.3d at 1067). Indeed, there are multiple e-mails between March and August, 2008 which evince growing dissatisfaction with Plaintiff's work product, attitude and ability to work with her co-workers. (Exhibits "U"—"Z" to Newtown Township's Motion for Summary Judgment). In addition, in a Memorandum dated May 19, 2008 confirming a discussion that took place that same day, Mr. Czajkowski outlined in writing his expectations for the plaintiff in her position and noted that he would have a follow-up meeting with Plaintiff in 90 days. (Exhibit "AA" to Newtown Township's Motion for Summary Judgment).

Although there is evidence that Mr. Boyle violated the Township's "no fraternization" policy by having an extra-marital affair with Pat Davidson and that several other Township employees violated the Township's computer use policies but were not disciplined, there is no evidence that either Mr. Czajkowski or the Township Board of Supervisors had any knowledge of these transgressions until after this lawsuit was commenced. We therefore cannot find that Ms. Garcia was intentionally treated differently from similarly situated Township employees nor can we find that this evidence is sufficient to cause a reasonable factfinder to discredit the Town-

ship's articulated reasons for Plaintiff's termination.

We also cannot find that adequate evidence exists that discrimination was more likely than not the true reason behind the plaintiff's firing. On this point, we note that the **only** evidence on the record is the testimony of the plaintiff herself that: (1) Mr. Czajkowski once asked her about her last name, wanting to know whether it was her married name and then remarked that she could cause a lot of trouble with that name; and (2) she was told by one Charles Patton, a retired Newtown Township police officer who was also suing the Township, that Mr. Czajkowski had once called her a "cunt." (Garcia Dep., pp. 196–198, 210–213). Inasmuch as there is nothing to suggest that these are anything other than two isolated incidents, unrelated to one another or to the plaintiff's working conditions, they do not satisfy Plaintiff's burden of showing that her termination was more likely than not the result of racial, sexual or age-based animus.

Likewise, though less than clear, it appears that Plaintiff may also be endeavoring to claim that she was unlawfully sexually and/or racially harassed and/or that her working conditions were illegally hostile and/or abusive. While it is clear that a violation of Title VII can be established through proof that discrimination based on sex has created a hostile or abusive work environment, "not all work place conduct that may be described as 'harassment' affects a 'term, condition, or privilege of employment' within the meaning of Title VII." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)); *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). Five factors are to be assessed in considering a claim of employment discrimination based upon a hostile or abusive work environment: (1) the plaintiff suffered intentional discrimination because of her gender; (2) the discrimination was pervasive or severe; (3) the discrimination adversely affected the plaintiff; (4) the discrimination would have detrimentally affected a reasonable person of the same protected class in that position; and (5) the existence of respondeat superior liability. *Hartley v. Pocono Mountain Regional Police Department*, 2007 WL 906180 at *2, 2007 U.S. Dist. LEXIS 20254 at *4 (M.D.Pa. March 22, 2007) (citing *Shahin v. College Misericordia*, 2006 WL 2642355, 2006 U.S. Dist. LEXIS 65272 (M.D.Pa. Sept. 13, 2006)). A totality of the circumstances test determines whether the threshold level of severity and pervasiveness has been reached with such factors as the severity of the harassment, the frequency of the harassment and the degree of abuse being the key factors which the court should consider. *Zelinski v. Pennsylvania State Police*, 108 Fed.Appx. 700, 704 (3d Cir.2004) (citing *Harris*, 510 U.S. at 23, 114 S.Ct. 367). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." *Id.* (quoting *Oncale* and *Harris*, both *supra.*).

■■■ In applying these principles to the matter at hand and viewing the evidence in the light most favorable to Plaintiff, we cannot find that the environment in which Plaintiff worked was "permeated with discriminatory intimidation, ridicule and insult" such as would alter the conditions of her employment. Here again, the only evidence of abuse comes from the testimony of the plaintiff that John Boyle forced her to stand at her desk while he sat in

her chair with his hands clasped at the back of his head, had her accompany him outside the building and had her stand in the cold while he pointed his finger at her and yelled at her, took work and a training class away from her, and told her that she had to socialize more with people in the office. Plaintiff also stated that Joseph Czajkowski yelled at her, refused to investigate her claims of abuse and harassment at the hands of Mr. Boyle and Ms. Davidson, told her that she didn't fit in with the other employees in the office and didn't "gel" with him and told her that she was always seeing "commies under the bed." While we do not disagree that some of these incidents may have been quite unpleasant for Plaintiff, we do not find them close to equating with the requisite ridicule, intimidation or insult nor do we find them sufficiently severe to alter the terms and conditions of her employment. Thus, to the extent that Plaintiff is attempting to seek relief under Title VII and the PHRA by way of a harassment theory, that attempt also fails. For all the foregoing reasons, judgment shall be entered in favor of the defendants and against Plaintiff as a matter of law on Counts Four and Five (mislabeled as second Count Three and Count Four) of the Complaint.

### D. Count Three—Monell/§ 1983 Claims

Although poorly drafted and difficult to understand, it appears that in Count Three of her Complaint, the plaintiff may be attempting to hold the Township Defendant liable under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and for the alleged violation of her constitutional rights to equal protection and due process of law.[11] Since we have already

---

11. Indeed, we simply cannot understand what Plaintiff means by:

> 35. At all times relevant to these causes of action the Defendants acted unreasonably, without probable cause, consent of the Plaintiff, privilege or right of law, in bad faith, outrageously, with free speech and/or petition clause activity by the Plaintiff as the primary, substantial or motivating basis for the actions, and/or under the policy, customs, and practices of Newtown Township.

Incredibly, it also appears as though several of the paragraphs contained in Count Three belong to an altogether different lawsuit as the following excerpts illustrate:

> 34. Defendants (sic) action are (sic) alleged to be done under a policy (sic) practice and/or custom of Newtown Township and/or its officials, and such policy, practice or custom is intended to discriminate against officers in their employment and retaliate against employees for engaging in lawful and/or protected activities, such as but limited to free speech and petition clause activities, and further the policy practice and custom is intended to or is so overly broad as to impermissible (sic) deprive or chill the exercise of free speech and/or petition clause activities.

> . . .

> 38. The Defendants (sic) acts, actions, and conduct were over-reaching conduct, which conduct was intended and designed to be such and to accomplish an illegal purpose, which was to deprive rights, or chill them, and to treat Plaintiff unequally in the terms and conditions of his employment than others who are similarly situated, such as but not limited to reporting police misconduct, suing for wrongful termination, an (sic) appearing in court and providing testimony.

Nowhere else in the complaint and nowhere in the record is there any indicia that the plaintiff was ever either a police officer or a man who reported police misconduct. Accordingly, this Court is at a loss to fathom how these averments have any relevance to the instant matter. It is also noteworthy that Plaintiff's counsel's briefs and other written submissions are replete with typographical errors and other incomprehensible sentences. Given that the Pennsylvania Bar requires all practicing attorneys in the Commonwealth to obtain 12 hours of CLE credits annually, we would strongly recommend that Plaintiff's counsel henceforth spend most, if not all, of his CLE time in courses focusing on legal writing.

determined that the plaintiff did not possess a property interest in her employment entitling her to due process protection and since the Supreme Court has concluded "that the class-of-one theory of equal protection has no application in the public employment context[12], summary judgment shall be entered in favor of the Township on those issues as a matter of law. We thus now consider whether sufficient evidence exists to sustain a § 1983 cause of action for violation of Plaintiff's First Amendment constitutional right to speak about the work habits of the Manager and Assistant Manager of Newtown Township without fear of reprisal under *Monell.*

Simply stated, the *Monell* decision stands for the following principle:

[A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom[13], whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell,* 436 U.S. at 694, 98 S.Ct. at 2037–2038. Municipalities thus cannot be held liable under a theory of *respondeat superior* and it is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. *Board of County Commissioners of Bryan County v. Brown,* 520 U.S. 397, 403, 404, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997). Rather,

[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged. That is, a plaintiff must show that the municipal action

---

**12.** Specifically, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne, Texas v. Cleburne Living Center,* 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). This clause does not, however, "prevent the states from making reasonable classifications among such persons." *Doe v. Pennsylvania Board of Probation & Parole,* 513 F.3d 95, 112 (3d Cir.2008) (quoting *W & S Life Insurance Co. v. State Board of Equalization,* 451 U.S. 648, 656–657, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981)). "If a distinction between persons does not implicate a suspect or quasi-suspect class, state action will be upheld if it is rationally related to a legitimate state interest." *Amiriantz v. New Jersey,* 251 Fed.Appx. 787, 789 (3d Cir.2007). And, "[a]n equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination but instead claims that she has been irrationally singled out as a so-called "class of one."" *Engquist v. Oregon Department of Agriculture,* 553 U.S. 591, 601, 128 S.Ct. 2146, 2153, 170 L.Ed.2d 975 (2008)

(quoting *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000)). To proceed on such a claim, a plaintiff must allege that he or she has been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Zahl v. New Jersey Department of Law & Public Safety,* 428 Fed.Appx. 205, 209 (3d Cir.2011) (quoting *Engquist, supra.*); *Renchenski v. Williams,* 622 F.3d 315, 337–338 (3d Cir. 2010). This "class-of-one theory of equal protection," however, "has no application in the public employment context." *Engquist,* 128 S.Ct. at 2156; *Conard v. Pennsylvania State Police,* 360 Fed.Appx. 337, 339 (3d Cir.2010). Accordingly, we must grant summary judgment in favor of defendants on the equal protection theory as well.

**13.** " 'Policy' includes official proclamations made by a municipal decisionmaker with final authority, and "custom" is defined as 'practices of state officials ... so permanent and well settled as to virtually constitute law.' " *Kelly v. Borough of Carlisle,* 622 F.3d 248, 263 (3d Cir.2010) (quoting *Berg v. County of Allegheny,* 219 F.3d 261, 275 (3d Cir. 2000)).

was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Id.*

"The first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989). It is not enough for a § 1983 plaintiff to merely identify conduct properly attributable to the municipality; the plaintiff must also demonstrate, that through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. *Bryan County,* 520 U.S. at 404, 117 S.Ct. at 1388. This "deliberate indifference" standard is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. *Id.,* at 410, 117 S.Ct. at 1391. "Thus, when city policymakers are on actual or constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program." *Connick v. Thompson,* —— U.S. ——, 131 S.Ct. 1350, 1360, 179 L.Ed.2d 417 (2011) (citing *Bryan County,* 520 U.S. at 407, 117 S.Ct. 1382). Indeed, " '[t]he city's policy of inaction' in light of notice that its program will cause constitutional violations 'is the functional equivalent of a decision by the city itself to violate the Constitution.' " *Id.*(quoting *Canton,* 489 U.S. at 395, 109 S.Ct. 1197).

Finally, a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train.... Policymakers' continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability." *Id.* (quoting *Bryan County,* 520 U.S. at 407, 409, 117 S.Ct. at 1390).

In this case, there is no evidence whatsoever that Newtown Township or any of its policymaking employees promulgated, permitted or were deliberately indifferent to a custom, practice or policy on the part of its officials or employees which authorized, sanctioned or condoned retaliatory actions or terminations for speech concerning a matter of public concern by anyone. Summary judgment is therefore also properly entered in favor of the defendants as a matter of law as to Count Three in its entirety.

### E. Qualified Immunity

The various members of the Township Board of Supervisors also assert that they are protected from suit by the doctrine of qualified immunity.

The purpose of qualified immunity is to shield "government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person should have known." *Wilson v. Layne,* 526 U.S. 603, 609, 119 S.Ct. 1692, 1697, 143 L.Ed.2d 818 (1999) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). In the March 2, 2010 Memorandum and Order issued by this Court, however, we dismissed all of the claims against the Supervisors in their official capacities (albeit with leave to re-plead) and there are no allegations in the remaining portion of the complaint which could be read as giving

rise to a viable cause of action against the Supervisors as individuals in their own right. We observe that Plaintiff did not make any efforts to amend or to re-plead the official capacity claims against any of the Township Supervisors and it is for these reasons that we shall also now enter judgment in favor of Messrs. Jirele, Ciervo, Calabro, Gallagher and Schenkman in this matter.

In conclusion then, Defendants' Motion for Summary Judgment is granted in all respects with the exception of Plaintiff's claim against Defendant Czajkowski for retaliatory dismissal in violation of her First Amendment right to speak on the matter of the amount of time Messrs. Czajkowski and Boyle spent working for the Township and/or the said individuals' use of Township work time. An order follows.